EMILY MEAD, Administratrix of DAVID MEAD, JR., deceased, Respondent, v. WILLIAM A. BUNN, Appellant.

A pledge obtained by false representations of the creditor, though unredeemed by the debtor, vests no interest in the pledgee.

A contract obtained by fraudulent means, though perfect in form, is void in law.

The omission by one of the parties to an agreement, to *make inquiries* as to the truth of facts stated by the other, cannot be imputed to him as negligence.

Every contracting party has an absolute right, to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement.

The *onus* is upon the party who alleges error in the decision of a referee, or of a judge without a jury, to show that an erroneous legal conclusion has been deduced from the facts found, or that some error of law has been committed in the interlocutory proceedings by which such conclusion was reached.

THE action was for the conversion of a promissory note, executed by Stevens and others to the plaintiff, and by him pledged to the defendant.

The plaintiff united with one Crydenwise in the execution of a bond to the defendant, accompanied by a mortgage from Crydenwise.

Before the principal sum became due, the mortgagor, in the course of making improvements on the premises, cut ten of the trees then growing on the mortgaged property. The defendant availed himself of the occasion to threaten the obligors with a suit in equity, and falsely represented that the mortgage contained a provision by which the cutting of trees on the property made the whole debt due immediately.

On this representation, which the referee found to be false and fraudulent, the plaintiff was induced to agree to pay one hundred dollars of the principal sum before it became due; and to pledge as security for such payment the note now in question, for an amount exceeding that sum, with an agreement that, in case of default, the defendant might appropriate the note to his own use, on indorsing one hundred dollars upon the mortgage.

The plaintiff on the day named, made a tender, which was objected to as insufficient. He made a subsequent tender,

which also proved to be insufficient. He demanded the note, but the defendant refused to surrender it, and elected to appropriate it to his own use, and indorse one hundred dollars on the mortgage.

Judgment was rendered for the plaintiff, and affirmed on appeal to the General Term of the sixth district. From that judgment the present appeal was taken.

*R. M. Townsend*, for the appellant.

*Benjamin Estes*, for the respondent.

PORTER, J. The note, for the conversion of which the action was brought, was originally the property of the plaintiff. He continued to be the owner at the time this suit was commenced, unless his interest had passed by an effectual transfer to the defendant.

The facts on which the appellant rests his claim, are these: He held a bond executed by the plaintiff, and one Crydenwise, on the 8th of December, 1857, accompanied with a mortgage from the latter, covering a farm owned by Crydenwise, and securing the payment of $1,053 on the 1st of April, 1859, with interest payable annually on the first of April.

In February, 1858, some two months after the execution of the mortgage, Crydenwise, who was then engaged in erecting buildings which would enhance the value of the property, had occasion to cut ten of the trees then growing on the farm.

The plaintiff seized the opportunity to menace the obligors with a suit in equity, and, to induce them to yield to his exactions, he represented that the mortgage contained a provision under which the act of Crydenwise, in cutting these trees, made the whole amount secured by the mortgage due immediately, as a forfeiture for breach of the supposed condition. He also represented that, by contrivance between himself and the scrivener, this clause had been concealed from the obligors at the time the papers were executed.

These representations were false. They were made with deliberation and design. They accomplished the fraudulent purpose meditated by the defendant, and induced the plaintiff and Crydenwise, in compliance with the defendant's

demands, to agree to pay one hundred dollars of the principal debt a year before it matured, and to secure the payment of the sum thus extorted, by the pledge of a note for a larger amount then held and owned by the plaintiff. The defendant, in harmony with his general purpose of exaction, required and obtained a stipulation, that in case of default in the prompt payment of the one hundred dollars on the 20th of April next ensuing, he should be at liberty to indorse that sum as paid on the mortgage, and to appropriate the pledged note to his own use, thus securing to himself a bonus of thirty-three dollars, as a forfeiture for the non-payment of a hundred dollars, within two months and a half from the date of the engagement.

The plaintiff undertook, but failed to comply with the conditions of the pledge. The facts, though insufficient to satisfy the terms of the arrangement and work out the redemption of the note, are still significant in developing the fraudulent purpose of the defendant. The interest on the mortgage was paid on the 1st of April, pursuant to the terms of the bond, and on the 20th of the same month, the day appointed for the redemption of the pledge, the plaintiff offered sixty-three dollars and ninety cents in money, and the balance of the one hundred dollars, in the dishonored note of a third party, held and owned by him, the payment of which was guaranteed by the defendant; and to this it is conceded there was no defense. The acceptance of these was refused, on the sole ground that the money offered was not tendered in gold. The plaintiff, within a reasonable time, renewed the offer of the guaranty with the balance in coin. The defendant then raised the objection that he was not bound to accept the guaranty in part payment, and as the entire amount was not offered in gold, and the day of payment had passed, he claimed to be entitled to appropriate the one hundred and thirty-three dollars, secured by the pledged note. He accordingly indorsed on the bond a payment of one hundred dollars, not due by its terms, and never, in fact, made, and refused to surrender the note in compliance with the plaintiff's demand.

The tender was insufficient, and the plaintiff would, therefore, be without redress but for the inherent vice which corrupted the transaction in its origin.   It is found, as matter of fact, that the pledge was procured by falsehood, and, though unredeemed, it cannot be permitted to stand.   A contract obtained by fraud, though perfect in form, is void in law. The element of fair and free consent is essential to the validity of every mutual engagement.   The homely maxim that honesty is policy, is nowhere more firmly rooted and grounded than in the foundations of our civil jurisprudence.   No man can safely rest on a title acquired through his own deliberate wrong; and in the present case, the defendant has no semblance of claim to the note in question, except that which he seeks to deduce from his own fraud.

It is unnecessary to consider the question whether the extortionate terms of the pledge rendered it void, as *contra bonos mores*, and opposed to public policy; for the agreement was fatally tainted in its inception, and it was no sooner concluded between the parties than it was annulled by operation of law.

It is claimed, in behalf of the appellant, that the mortgage was duly recorded, and that the plaintiff was, therefore, chargeable with *constructive notice* that the statements of the defendant, as to its contents, were false.   No such fact is found by the referee; but if it were otherwise, it is sufficient to say that it is neither the purpose nor the office of the recording acts, to charge the immediate parties with constructive notice of the precise contents of the instruments they execute, but to notify subsequent purchasers and incumbrancers of the rights such instruments are intended to secure.

It is also claimed that the plaintiff, having heard the mortgage read by the scrivener before he affixed his signature, was not at liberty to credit the subsequent false and fraudulent statement of the defendant, that it contained a provision declaring the principal due immediately, if growing trees were at any time cut by the mortgagor.   On this subject, it is enough to say that the defendant falsely and fraudulently represented to the plaintiff that by collusion between himself

and the scrivener, the mortgage was so read, by design, at the time of its execution, as to mislead and deceive the parties by whom it was executed.

It is insisted, on behalf of the appellant, that the offer of the plaintiff, on the 20th of April, to pay a hundred dollars of the principal sum secured by the mortgage, before it became due by its terms, was a ratification of the pledge procured by the defendant's fraud. No such ratification is found by the referee; and on appeal every reasonable intendment on questions of fact, as well as of law, is to be made in support of the original judgment.

The party who alleges error in the court below, holds the · *onus* of showing that from the facts found, an erroneous legal conclusion has been deduced; or that some error of law has occurred in the interlocutory proceedings by which such conclusion was reached.

It is not the province of this tribunal to review the findings of fact in the courts below, unless in exceptional cases; as where the judgment has been already reversed, or where the appeal is from a decree in the Surrogate's Court, or in the late Court of Chancery; but if we were at liberty in this case to reconsider the facts, we find nothing in the evidence to justify the conclusion that the plaintiff ever ratified the pledge into which he was drawn by falsehood and deception. It is true that on the 20th of April he offered to pay $100 on the mortgage if the defendant would surrender the Stevens note. That offer was rejected. If it had been accepted, the defendant would have had the benefit of a payment of a portion of his debt before it became due. But there was no waiver of the fraud, no recognition of the validity of the pledge, and no release by the plaintiff of his interest in the Stevens note. It belonged to him in his own right. He demanded and sought to reclaim it. The defendant, as the referee finds, rudely refused to surrender it, unless redeemed by the payment of a hundred dollars in gold. This was a plain conversion of the note. It was an unavailing attempt to use for a fraudulent purpose a possession acquired by fraudulent means. The collateral pledge was void; and no validity was

imparted to it by the unaccepted offer of the plaintiff to pay a.portion of the mortgage debt before it matured.

It is claimed that when this offer was made, if not before, the plaintiff was *constructively* chargeable, by lapse of time, with notice of the fraud by which the defendant had entrapped him into the engagement. This proposition rests on the mistaken assumption, that a false representation by one of the parties to a contract puts the other *on inquiry* as to its truth. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth. of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith.

The judgment of the court below was right, and should be affirmed, with costs.

DAVIS, J., also delivered an opinion for affirmance.

All the judges concurring; the judgment was affirmed, with costs, and damages for delay.