Clark *v.* Rankin.

---

CLARK and HOYT *vs.* RANKIN.

The rules of law deduced from the maxim *caveat emptor* have reference generally, and more particularly, to the *condition* of personal property, sold by one party to another.

The general rule is that the purchaser is bound to examine and ascertain the defects in the thing sold, and unless there is some misrepresentation, or artifice, to disguise it, or some warranty as to its qualities or character, the vendee is bound by the contract, notwithstanding there may be intrinsic defects and vices in it, known to the vendor and unknown to the vendee, materially affecting its value.

Clark *v.* Rankin.

The maxim of *caveat emptor* has no application to cases of *actual successful fraud* practiced by the vendor upon the vendee.

The question whether the vendee was actually deceived is always open. If he was not deceived by the representations or acts of the vendor, though they were false, then he has no cause of action.

On a sale of certain leases, or leasehold estate, by the defendant to the plaintiffs, the former represented and stated that the property rented for $4000 yearly, and a written statement was produced by the defendant, of the rents to be received from the property, footing at about that amount. This statement contained a list of the leases, and the amount of rents reserved. Among the leases therein specified was a lease to the Buffalo and Lake Huron Railway Company, for ten years, at a yearly rent of $600. Nearly seven years and ten months of the term were unexpired. In fact the rent to accrue upon that lease, thereafter, was only $111.11, annually, the sum of $5000 having been already paid upon such lease, and indorsed thereon, according to the terms of payment specified therein. *Held*, that notwithstanding the lease, with the indorsements, showed that $5000 of the rent was payable at two specified periods prior to the sale of the lease to the plaintiffs, and that the same had been paid, when due, leaving only a yearly rent of $111.11 to be paid in future; and assuming that under ordinary circumstances it would have been the duty of the plaintiffs to examine the lease assigned, to see whether it contained any special or unusual provisions; yet that the fraudulent acts and representations of the defendant were well calculated to satisfy them, and to cause them to omit such examination; and that the plaintiffs having been actually deceived and defrauded by means of such representations, an action lay, for damages. GROVER, P. J. dissented.

*Held, also*, that the right of the plaintiffs to recover did not depend upon their care and prudence in examining the lease, in respect to the rents reserved, and the payments that had been already made.

That they had a right to rely upon the representations made by the defendant, that the rents reserved amounted to $4000, annually, and that to make up this sum, the annual rent on the railroad lease was $600.

That, in other words, the omission of the plaintiffs to examine the lease and the receipts upon it was not such negligence as would deprive them of a right of recovery.

That the facts being established, by the undisputed evidence, the question whether the omission of the plaintiffs to examine the railway lease involved such a want of care and prudence as to defeat their right to recover, was a question of law to be decided by the court, and should not have been submitted to the jury.

MOTION by the plaintiffs for a new trial, on exceptions first heard at the general term. The action was to recover damages for an alleged fraud practiced by the defendant upon the plaintiffs in the sale of certain leases or leasehold

estate.   The alleged fraud consisted in representations made by the defendant touching the rents reserved by the leases, and thereafter to become due and payable.   The evidence showed, or tended to show, that the defendant represented and stated that the property rented for $4000 yearly, and that a written statement was produced by the defendant, and presented to the plaintiffs, of the rents to be received from the property, footing at about that amount.   This statement contained a list of the leases, and the amount of rents reserved.  In this list was a lease to the Buffalo and Lake Huron Railway Company, specifying the rent at $600.

The parties, after seven days negotiation, agreed upon the terms of sale and purchase, and the defendant left the leases, held by him, at the office of his attorney, to prepare the necessary papers.   A few days thereafter the parties met at the office of the defendant's attorney, and the counsel of the plaintiffs was present.   The agreement between the parties, dated August 1, 1864, had been prepared for execution, and the leases were present, upon the table, open for inspection and examination by any of the parties.   They were not read or examined by the plaintiffs or their counsel; the plaintiffs relying upon the statements previously made by the defendant, as to the annual rents reserved and payable by the leases. The leases were taken away by the plaintiffs, and on examination some time afterwards, it was discovered that by the lease to the railway company, dated January 1, 1862, for the term of ten years, there was a reservation of the yearly rent of $600, to be paid $3000 cash at the time of the execution and delivery thereof, and $2000 on the 1st day of January, 1863, and the residue in equal semi-annual payments thereafter.   This lease consisted of five and a half written pages, on alternate pages, and on the back of the fifth page were the indorsements of the $3000 and the $2000.   To this lease was annexed an outer sheet, on the outside of which was an assignment to the defendant, and under this was the assignment by the defendant to the plaintiffs, dated August 6, 1864.

Clark *v.* Rankin.

The case contained special facts in relation to the prepayment of $200 rent upon one of the other leases; but it is not necessary to state them here.  On the part of the defendant, the evidence showed, or tended to show, that no misrepresentation was made by the defendant, during the negotiation. That in the *list* of the leases, furnished to the plaintiffs, specifying the rents, there was an entry in connection with the "Lease to the Buffalo and Lake Huron Railroad Co." thus: "All paid, except $111.11 per year."  The plaintiffs had not preserved the list furnished to them, having destroyed it at a time when they supposed the negotiation had ended in a failure.  The evidence of the plaintiffs, as to any such entry upon the list furnished them, was in direct conflict with the evidence of the defendant.

The court charged the jury that, under the circumstances, it was the duty of the plaintiffs to exercise ordinary care and prudence in availing themselves of the means of knowledge in their possession for ascertaining the terms of the leases to the railway company, and the payments of rent in pursuance of such terms; and it was for the jury to say, from all the evidence in the case, whether or not the plaintiffs had exercised such care and prudence.  Exception by the plaintiffs.  The court also charged that if the jury should find that the defendant falsely and fraudulently represented to the plaintiffs that they would receive annually $600 on the lease, and that the plaintiffs were thereby led to believe, and did believe, that they would receive that amount; and that, relying on such representations, they made the purchase in question; and that but for such representations they would not have made it; and if they were also satisfied and should find that the plaintiffs did exercise ordinary care and prudence in availing themselves of the means of knowledge in their possession, for ascertaining the terms of the railroad lease and the payment of rent in pursuance of such terms, then the plaintiffs would be entitled to recover.  But if they should find that the defendant did not make such representations, or if they

should find that the plaintiffs did not exercise ordinary care and prudence, in availing themselves of the means of knowledge, &c. &c. then the plaintiffs would not be entitled to recover. The plaintiffs excepted to that part of the charge touching their care and prudence. Their counsel asked the court to charge that if the jury should find that the defendant falsely and fraudulently represented to the plaintiffs that they would receive $600 per year, on the lease, and that the plaintiffs were thereby led to believe, and did believe, that they would receive that amount, and that, relying on such representations, they made the purchase, and that but for such representations they would not have made it, then the plaintiffs would be entitled to recover. The court refused so to charge, except in connection with the proposition touching the exercise of ordinary care and prudence by the plaintiffs; and the plaintiffs excepted. The verdict was for the defendant.

*Hopkins & Hulbert,* for the plaintiffs.

*H. S. Cutting,* for the defendant.

MARVIN, J. Were the plaintiffs entitled to the charge simply as requested? If so, there must be a new trial; otherwise not.

In my opinion the court erred in refusing the requested instructions. If the facts were as shown by the plaintiffs' proof, the representations made by the defendant were false, and the plaintiffs were actually deceived and defrauded. (It was admitted that the amount which the plaintiffs were entitled to recover, if they should have a verdict, was $3074.) The case is peculiar. The sale was of a leasehold estate and the lease and sub-leases. One of these leases was for ten years, nearly seven years and five months of the term unexpired, "yielding and paying therefor, yearly and every year, the sum of six hundred dollars, to be paid as follows, that is

Clark *v.* Rankin.

to say; three thousand dollars cash down, at the execution and delivery thereof, two thousand dollars on the first day of January, which will be in the year of our Lord 1863, and the residue of the said annual rent in equal semi-annual payments thereafter." This is a peculiar and unusual provision. More than $5000 of the rent had been paid. The annual rent, thereafter, was only $111.11, instead of $600 as represented by the defendant. Now it is true that the lease assigned to the plaintiffs, with the indorsements, showed these facts, and the learned judge brought into the case the position that the purchasers were bound to exercise ordinary care and prudence in availing themselves of the means of knowledge in their possession for ascertaining the terms of the lease, and the payment of rents in pursuance of such terms, and if they failed to exercise such care and prudence then they could not recover. In my opinion the right of the plaintiffs to recover did not depend upon their care and prudence in examining the lease as to the rents reserved and the payments that had been made. They had a right to rely upon the representations made by the defendant, that the rents reserved amounted annually to $4000, and that to make up this sum the annual rent of the railroad lease was $600. In other words, the omission of the plaintiffs to examine the lease and the receipts upon it was not such negligence as would deprive the plaintiffs of a right of recovery. There was no dispute, upon the evidence, as to the facts touching the examination of the leases by the plaintiffs. They did not make the examination. And the question whether such omission involved such a want of care and prudence as to defeat the plaintiffs' right to recover should not, I think, have been submitted to the jury. This question should have been decided by the court. There was was no fact, in this part of the case, for the jury to find. The facts were established by the undisputed evidence, and the question was, whether they defeated the right to recover. This, I think, was a question of law.

The learned judge, in his charge, probably had reference

to the law of *caveat emptor.* The rules of law deduced from this maxim have reference generally, and more particularly, to the *condition* of personal property sold by one party to another. The general rule undoubtedly is, that the purchaser is bound to examine and ascertain the defects in the thing sold, and unless there is some misrepresentation or artifice to disguise it, or some warranty as to its qualities, or character, the vendee is bound by the contract, notwithstanding there may be intrinsic defects and vices in it, known to the vendor and unknown to the vendee, materially affecting its value. (*Bouv. Law Dic. title Caveat Emptor.* 2 *Kent's Com.* 482, *et seq.* 1 *Parsons on Cont.* 460, *et seq.*) Parsons says the decisions under the rule of *caveat emptor* have fluctuated very much, and there is a noticeable conflict and uncertainty in respect to many points of the law of warranty upon sales, but some exceptions and qualifications to the general rule are nearly, if not quite, established, both in England and in this country ; and the rule *caveat emptor,* thus modified, may perhaps be regarded as, upon the whole, well adapted to protect right, to prevent wrong, and to provide a remedy for wrong when it has occurred. He adds : One important and universal exception is this, the rule never applies to cases of fraud ; never proposes to protect a seller against his own fraud, nor to disarm a purchaser from a defense or a remedy against a seller's fraud. If the article is present and open to the inspection of the parties, and the seller remains silent, neither saying or doing any thing to mislead the purchaser, and there is no secret defect in the article, known to the seller and unknown to the purchaser, the maxim *caveat emptor* usually applies. If, however, the seller is not silent, but produces the sale by means of false representations, then the rule of *caveat emptor* does not apply, and the seller is answerable for his fraud. (1 *Pars. on Cont.* 461.)

Kent says, if the defects in the article sold be open equally to the observation of both parties, the law does not require of the vendor to aid and assist the observation of the vendee.

Clark *v.* Rankin.

If, however, the vendor says or does any thing whatever with intention to divert the eye or obscure the observation of the buyer, even in relation to open defects, he would be guilty of an act of fraud. He adds: A deduction of fraud may be made, not only from deceptive assertions and false representations, but from facts, incidents and circumstances. which may be trivial in themselves, but decisive evidence in the given case, of a fraudulent design.

In the absence of *active fraud,* by the vendor, the vendee should not be wanting of attention to those points, when the attention would have been sufficient to protect him from surprise or imposition. If he is thus inattentive, the maxim of *caveat emptor* should apply.

But as I understand the authorities, the maxim has no application to cases of *actual successful fraud* practised by the vendor upon the vendee. The question whether the vendee was actually deceived is always open. If he was not deceived by the representations or acts of the vendor, though they were false, then he has no cause of action. Take the case of the representation that the horse is. perfectly sound, when in fact an eye is missing, and this is known to the vendor, or is so entirely obvious that had he examined he would have discovered it. In such a case it is understood that the representation of soundness was not intended to apply to the eye, and even a warranty of soundness would not cover such a defect; but, as Kent says, the vendor must not do or say any thing whatever with intent to divert the eye or obscure the observation of the buyer. If he does, he will be guilty of an act of fraud.

Apply these principles to the present case. If the facts were as claimed by the plaintiffs, they were deceived by the false representations of the defendant. These representations were made not only orally, but a list of the leases and the annual rents was furnished to the plaintiffs, showing the annual rent by the railroad lease to be. $600, whereas in fact the rent to accrue was only $111.11 annually. Assuming that

it was the duty of the plaintiffs, ordinarily, to have examined the papers in the office of the attorney, the fraudulent acts and representations of the defendant were such as were well calculated to satisfy the plaintiffs, and to cause them to omit any examination of the papers for the purpose of ascertaining any special or unusual provisions in them.

In *Lefever* v. *Lefever*, (30 *N. Y. Rep.* 27,) the plaintiff, a director of a bank, purchased stock of the cashier upon the representations of the latter as to the condition of the bank. It was held that if the representations were false and the plaintiff was deceived, he was not estopped from setting up his actual ignorance of the condition of the bank. Wright, J. says: "It was simply a sale of stock, by one officer to another; and although the vendee was a director, having the means of knowledge, he was not, in the particular transaction, chargeable with notice of the condition of the bank. If he was *actually ignorant* of its condition, the fraudulent vendor would be legally responsible to him for the deceit, as to any stranger to the institution. It was not a case in which the plaintiff was legally bound to know the truth or falsity of the defendant's affirmation."

In *Mead* v. *Bunn*, (32 *N. Y. Rep.* 275,) it was held that the omission by one of the parties to an agreement, to make inquiries as to the truth of facts stated by the other, can not be imputed to him as negligence; and that every contracting party has a right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual engagement; and he is under no obligation investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith. This was so held in a case of false representations as to the contents of a mortgage on record. The falsity of the representation would have been at once detected upon an examination of the record. (*See also Story's Eq.* §§ 191, 192, 193, 195, *et seq.*; *Neville* v. *Wilkinson.* 1 *Bro. Ch. R.*

546,) And see *Binnard* v, *Spring*, (42 *Barb.* 470,) in which I had occasion to examine the cases cited by Story, and some other cases, and to show that in that case the *scienter* was necessary, and that it was wanting, and that no action for fraud could be sustained. There is no such question in this case ; and the cases above cited are germain to the question. (*See also Benton* v. *Pratt,* 2 *Wend.* 385 ; *Livingston* v. *The Peru Iron Co.,* 2 *Paige,* 391.)

The motion for a new trial, upon the exceptions, should be granted.

DANIELS and DAVIS, JJ. concurred,

GROVER P. J. dissented.

New trial granted.

[ERIE GENERAL TERM, September 3, 1866. *Grover, Daniels, Marvin* and *Davis,* Justices.]