Neilson, J.
This action was brought for relief in respect to the exchange of land in New Utrecht in Kings county, for a bond and mortgage, the mortgage *392 being on property in Hew Jersey. It is claimed that the plaintiff was defrauded.
The bond and mortgage which the plaintiff had accepted for her land had been given to the defendant Millie T). Powers, for the sum of four thousand" one hundred fifty dollars, and the defendant Smith had an interest in it for advances ; there was a prior incumbrance on the property amounting to one thousand five hundred dollars. ■
The plaintiff had no knowledge of the condition and character of the Hew Jersey land, nor indeed' any information other than that given by the defendants. Her broker was equally ignorant.
In negotiating this exchange, the defendant Edward J. Powers, the agent of his wife Millie D. Powers, stated that he knew the Hew Jersey farm; that it was or lately had been a garden or truck farm, that eighty acres of the one hundred and five were cultivated, the rest woodland, that there were good buildings, that the mortgage was good and valid, and subject to the prior lien of one thousand five hundred dollars. In fact, as he well knew—the land was not a'farm, had not been cultivated, had no wood timber, was marshy and boggy —a deserted unreclaimed common—not worth more than the first incumbrance ; the mortgage assigned to 'the plaintiff being of no value whatever.
These representations were communicated to the plaintiff, and relied on by her; some of them were oral, the residue in a lithographic copy of a paper which had been written by Mr. Powers, and purporting to give circumstantially the alleged character of the farm. That paper statement had been prepared some time before, to be used as opportunities for a trade might be found ; but that is of no moment, it was used with, and took effect upon, the plaintiff.
But after stating in unqualified terms the use which had been made of the farm, the existence of woodland *393 and improvements, thus justifying the representation that this was a good mortgage, that paper closed with the words—“examine for yourself, and find out particulars and value of the farm.” On the argument, the counsel for the defendants considered that clause 01 controlling importance. I do not so regard it. It did not qualify any of the previous statements'.
If the defendants had been silent as to the improvements on the land, the duty of the plaintiff to make the examination,-or to seek for information elsewhere, would have been plain, but in speaking of the material facts they were bound to speak truly. If this land had been or could be used as a farm, if there were buildings and timber as stated, and the question was whether the improvements conformed to and justified the representations, that clause would be beneficial to the defendants. If, for. instance, there had been any buildings, the declaration that there were good buildings would be regarded as the expression of á mere opinion. But when a party who knows the land represents that there are good buildings when there are no buildings whatever, it is difficult to resist the conviction that a strong feeling of interest prompted the invention; that the intent was to mislead the purchaser, and divert her from making any examination. • Why was that concluding clause added to the paper ? Was it to be acted upon? If 50, why make statements calculated-to inspire confidence, when the most casual inspection would dispel the delusion ? That invitation, given with apparent frankness, as if the examination would be beneficial to the proposed sellers of the mortgage, secured for the circumstantial statement the greater confidence and respect.
The devices resorted to, to qualify the appearance of fraud, like those intended to- cover up usury, are often so painstaking and subtile as to betray the conscious guilt of the wrongdoer. As long ago as when *394 Hovenden wrote it was declared to be dangerous to give a definition of fraud so inclusive and exclusive as to fix the limit, since the ingenuity of the unscrupulous would discover a means of evasion. Late writers have respected that view (1 Story Eq. J., § 186 ; 2 Pars. Cont., 5 ed., p. 769), and the most respectable attempts to give such a definition have met with criticism. On the whole our courts have considered it most safe and wise to leave each case to be determined according to. its own peculiar facts and circumstances, and the application of well settled principles. The paper before us is to be taken as a whole, and in connection with the other declarations, and was apparently intended to influence and satisfy a credulous purchaser. It is said, that as the plaintiff’s broker advised her to have this land examined, the defendants had a right to assume that she acted on that advice. But Mr. Powers could have had no such impression. Could he have believed that one going to find a farm with woodland and good buildings* and finding only a barren waste would have taken the mortgage? In the act of making the exchange he was admonished that the plaintiff was utterly ignorant of the false and fraudulent character of his representations.
The fact that by inspection the plaintiff might have discovered the value of the property does not excuse the fraud. It is true that the law does not protect those who by ordinary vigilance and attention might protect themselves. But the principle which exacts a certain degree of diligence from a contractor to whom false representations are made, is not applied to a case where the resident of one State is defrauded in the purchase of property situated in another State. In this transaction the plaintiff had a right to rely on the representations, and was not bound to verify them by making investigations (32 N. Y., 275 ; 46 Barb., 570).
As to the liability of Mr. Powers there is no room *395 for doubt or question. But it is claimed by the learned counsel that no liability attaches to the other defendants, considered separately or in combination with him. Mrs. Powers is and has been the owner of considerable property, and her husband, a real estate broker, has acted as her general agent—has made bargains for her without restraint. She has executed whatever papers he has presented freely, and often without reading them—she did so in this instance. The knowledge which her husband and agent had in the business became her knowledge; the fraud which was perpetrated through her agent, became her fraud by imputation and adoption (Craig v. Ward, 1 Abb. Ct. App. Dec., 454 ; 21 N. Y., 238 ; 1 Pars. on Cont., § 9, p. 73).
Before the plaintiff made her deed and accepted the assignment of the mortgage, and when she might safely have refused to carry out the preliminary contract, Mrs. Powers and Mr. Smith signed and verified affidavits, each containing the unqualified averment that this was a good and valid mortgage, thus confirming Mr. Power’s oral declaration. It is said that that had to do with the title simply. The word “valid” had that relation, but the word “good,” had reference to the character and sufficiency of the security. That was the sense and interpretation of those words accepted by he court of appeals in Craig v. Ward (above). So too, the word “good” as applied to a promissory note, does not mean merely that it is genuine, but that it is collectible (16 Barb., 342).
But it is urged that Mrs. Powers and Mr. Smith were utterly ignorant of the character of this land,- its condition and value. The answer is that one who makes a material misrepresentation to the,direct injury of another, without knowing whether it is true or false, is guilty of a wrong, and as liable for damages as if he had known it to be untrue (21 N. Y., 238 ; 31 Id., 518 ; 36 Barb., 377 ; 40 Id., 256).
*396 Mr. Smith executed the preliminary contract with the plaintiff, thus adopting the verbal bargain made by Mr. Powers. With bis assent the plaintiff’s land was granted by her to Mrs. Powers. Then Mrs. Powers made a formal conveyance to Mr. Smith, afterwards that was surrendered, and with the consent of the other two defendants, Mrs. Powers conveyed the land to Mr. Hoyt; and that deed was recorded immediately after the plaintiff had tendered a reassignment of the bond and'mortgage, and demanded a .reconveyance of the land. Thus, by joint and concurrent action, the defendants carried out this enterprise. In the language of the cases, they have received and apjfiied the fruits of the fraud, and are accountable. The principle stated by Lord Mansfield, that even where a third person should not be punished for the fraud of another, he should not avail himself of it (1 Bougl., 228), has been frequently applied in late cases. The distinction between active fraud .and mere negligence, between a misrepresentation known to be false, and made with intent to deceive, and one uttered without such knowledge and intent, however important in certain relations, cannot be invoked in favor of one who, either personally or by relation, has been engaged in the fraiidiilent acquisition of property. He cannot hold the property or its proceeds, and escape the imputation of fraud.
Some months after the trade the plaintiff received oné installment of interest on the bond and mortgage from Mr. Hopkins, to whom, in the mean time, the New Jersey land 'had been conveyed. Before taking the conveyance, Mr. Hopkins went to examine the land, Mr. Powers furnishing the directions. He' found a farm with improvements corresponding to the representations made, and was satisfied. That farm was also incumbered by two mortgages, one thousand five hundred dollars and four thousand one hundred and fifty *397 dollars, wliich lie assumed. But the deed conveyed to him not that farm but the comparatively worthless tract covered by the mortgage assigned to the plaintiff. He discovered the error after having paid that interest, and the plaintiff discovered her own position yet later. Her delay in taking legal proceedings, and the peculiar circumstance that she has received some interest, aré thus accounted for.
As the New Utrecht land has passed to other holders whose deeds have been recorded, parties not before the court, and, so far as appears, not affected by notice, the plaintiff cannot have a reconveyance of her land adjudged. But having come into the equity side of the court for that purpose, she can take judgment for the damages and costs.