## WILLIAM J. KING, JR., RESPONDENT, v. THOMAS LEIGHTON, APPELLANT.

*Settlement of partnership accounts—when it will be set aside because of the false and fraudulent statements of one partner—what allowance should be made for uncompleted contracts.*

In October, 1870, the plaintiff and defendant formed a copartnership for building and erecting iron bridges, the plaintiff furnishing the shops, engines, machinery, &c., and the defendant the cash capital. July 19, 1872, the plaintiff having been adjudged a bankrupt, the partnership was terminated, and the defendant paid to the plaintiff's assignee, certain moneys on account of plaintiff's interest in the business, and thereafter rented the shop and machinery, at first from him, and subsequently from the plaintiff, paying a stipulated rent therefor, up to November, 1873. In February, 1873, the bankruptcy proceedings having been dismissed, the plaintiff had a settlement with the defendant, and, upon the receipt of a certain amount from the latter, executed a receipt in full for all claims against the firm.

In this action, brought by him to obtain a resettlement of the partnership affairs, it was claimed, and found by the referee, that he was induced to make the said settlement by false and fraudulent representations, made to him by the defendant, as to the amount of the net earnings of the business.

*Held*, that, even though the plaintiff might, at the time of the settlement, have ascertained the actual condition of the accounts, yet, as the defendant had volunteered to make statements in regard thereto, the plaintiff was entitled to rely upon them, and that their falsity relieved him from the effect of the receipts then given.

By the copartnership agreement, the plaintiff was entitled to receive one-third of the net profits of the business. Upon the restatement of the accounts by the referee, he was allowed to recover one-third of the net profits realized from the completion of the work on hand, and unfinished at the time of the dissolution of the firm in July, 1872.

*Held*, that this was error.

*Semble*, that the allowance, if any, should have been based upon the value, if any, of the uncompleted contract at the time of the dissolution of the firm.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The parties were, in October, 1870, copartners in the business of building and erecting iron bridges, &c. The plaintiff furnished the shops, buildings, steam-engines, machinery and tools, known as King's Iron Works, at Buffalo, and the steam power necessary to drive the said machinery, as his part of the capital.

The defendant furnished the cash capital. The plaintiff became insolvent, and was adjudged a bankrupt July 19, 1872. Thereafter his assignee demanded a settlement by the defendant of the plaintiff's interest in the copartnership. The defendant, on January 3, 1873, paid, on account of such matters, the sum of $5,187.73, and gave a receipt therefor February 17, 1873. Thereafter the proceedings in bankruptcy were dismissed, and the plaintiff was. restored to and resumed possession of his estate and effects, on February 2 or 3, 1873. He then sought an adjustment with the. defendant. On February 28, 1873, such an adjustment was had, and the defendant paid to the plaintiff $5,018.28, which the plaintiff received in full of all claims and demands growing out of the copartnership business, and gave a receipt in full for such demands and claims. This receipt stated the mode and particulars of the payment of said $5,018.28, and then proceeded, viz. : " The above being *in full for rent* of works to date, as well as all claims against the firm of Leighton & Company."

Thereafter the defendant continued the business on his own account. The plaintiff withdrew all his capital contributed to the firm, and subsequently charged the defendant for, and received rent for the shop, machinery, and power.

The referee found : " That at or about the time of, and before the transfer of the recepits of said iron company, and of the execution and delivery to the *defendant of the said receipt* of February 28, 1873, the defendant falsely and fraudulently stated and represented tò the plaintiff the net earnings and profits of said copartnership during the *continuance thereof*, did not exceed the sum of $19,000."

" That the plaintiff, relying upon such statements and representations, and believing the same to be true, *received and accepted* the

said receipts of said iron company in settlement of said claims and demands, as alleged in the answer, and executed and delivered to the defendant the said receipt of February 28, 1873." He also found that the net earnings exceeded $19,000, and were about $49,000, and that the defendant made the said false statements to procure the said settlement, and the execution and delivery of said receipt of February 28, 1873.

It appeared by the evidence that the defendant had paid thirteen bills, for rent of shops and power, to the receiver of plaintiff, the assignee, and to plaintiff, covering the time between plaintiff's bankruptcy and November 7, 1873. The rent was charged at $20 per day for part of the time, and at $35 per day for the residue thereof.

In a former suit between these parties it was found that the defendant occupied the said shops, buildings and power, under an agreement to pay rent, which agreement was made about July 12, 1872, and that such occupation continued up to November 7, 1873, and that the rent therefor was paid in full by the defendant, the last payment having been made on November 18, 1873.

*W. F. Cogswell*, for the appellant.

*Rogers Locke*, for the respondent.

HARDIN, J.:

I think the evidence sufficient to uphold the finding of fact made by the referee, that the defendant falsely stated that the profits did not exceed about $19,000, and that the plaintiff relied thereon, whereas in truth the profits exceeded $49,000. It may be conceded that the plaintiff might, at the time he accounted with the defendant on the basis of $19,000 profits, have ascertained the actual situation of the accounts. Yet the defendant ought to have made true statements if he made any, and if he assumed to know what the profits actually were. The plaintiff was justified in reposing upon such statements, and the plaintiff ought not to be defeated by an imputation of negligence. (*Mead* v. *Bunn*, 32 N. Y., 275; *Clark* v. *Rankin*, 46 Barb., 578.)

Assuming that the settlement of February 28, 1873, was not con-

clusive upon the plaintiff, and that he was entitled to have and receive the actual profits, which had been earned at the time of the dissolution of the copartnership by his bankruptcy in July, 1872, we come to the question as to what rights the plaintiff has in the contracts that were on hand at the time of the dissolution, and which contracts were subsequently carried out by the defendant.

The referee has allowed the plaintiff to recover one-third of the profits, made by the defendant after the dissolution, upon contracts then in existence, and has stated the profits to be some $62,650, and as the plaintiff by the original agreement was to have one-third of the profits, the defendant has been charged $21,000 and upwards.

In that respect we think the referee has fallen into an error. The bankruptcy of the plaintiff in July, 1872, worked a dissolution of the copartnership. The defendant immediately treated the dissolution as accomplished, and agreed upon terms with the plaintiff for the use of the shops and power. The fact is found by the referee in a former action between the parties. The defendant by that arrangement was to pay rent for what had thereto been the capital contributed to the copartnership by the plaintiff.

He paid rent for the shop and machinery and power up to November 7, 1873, which was as long as he had the use of the same. The plaintiff claimed the rent and received the last of it as late as November 18, 1873. Thus we see the plaintiff had, himself, voluntarily withdrawn his original contribution to the capital of the copartnership. Thus he treated it as dissolved.

His acts in regard to such withdrawal, and his countenancing the payment of profits to his assignee on account, and his own negotiations for an adjustment, indicate an intention upon his part to treat the copartnership as dissolved, and the unfinished business as transferred to the defendant, subject to a fair ascertainment of the actual profits and value of the assets of the firm at the time of its dissolution. (*Collender* v. *Phelan*, 9 Weekly Dig., 571; opinion of RAPALLO, J.; *S. C.*, 79 N. Y., 366.)

Having withdrawn his capital and his own personal services, and become insolvent, so that his financial standing was impaired and his credit gone, and having charged rent and received it, upon what

was his share of the capital stock, I think it would be inequitable to allow him to take the same share in the profits of the business, carried on by the defendant after the dissolution, as he was entitled to prior thereto. (Lindley on Partn., 830, etc. ; *Willett* v. *Blanford*, 1 Hare 253; *Simpson* v. *Chapman*, 4 De G., Mac. & G., 154; *Wedderburn* v. *Wedderburn*, 22 Beav., 84.)

The dissolution, the withdrawal of capital, evinced such an intent to withdraw from the firm as to relieve the plaintiff from liability to pay subsequently contracted debts, as to the defendant, and as to creditors and dealers having notice thereof. And as to the defendant from liability to pay subsequently accruing losses. Under such circumstances the plaintiff ought not to receive the one-third of the profits which the defendant produced by his services and capital subsequent to the dissolution.

It may be that the defendant should upon a fair adjustment, between the parties, of the affairs at the time of the dissolution, and prior to the withdrawal of his capital, receive an allowance for the uncompleted contracts, if they then had 'an appreciable value.

But that question has not been discussed, so we have not the aid of the research of counsel and do not pass upon it, as it is not necessary to do so at this time. If we were to discuss it and reach a conclusion favorable to the plaintiff, we should still be obliged to send the case back for ascertainment of the value of such *contracts* at the time of the dissolution.

Judgment reversed and a new trial ordered before another referee, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.