[No. 1578.]

## B. F. SWINNEY, APPELLANT, *v.* W. H. PATTERSON, RESPONDENT.

NOTES AND BILLS—FRAUDULENT CONSIDERATION—PATENTS—PURCHASE WITH
NOTICE. Plaintiff wrote the cashier of a bank at the city of defend-
ant's residence that R., who would soon be in that city, represented
a thoroughly responsible concern, and would offer a meritorious
article for sale. Thereafter, R. arrived, accompanied by another,
and they established themselves in the business of selling safes and
territorial rights thereto, representing to defendant and others that
the safe was a patented article and new to the local markets, and
on these representations obtained notes of the defendant and of
others for about $10,000 in return for safes and rights. Plaintiff
afterwards purchased these notes, and R. gave to him a writing,
signed by defendant, which recited that defendant had received
certain safes for samples, together with order blanks—being every-
thing promised in a transaction wherein defendant's notes were
executed—and that the same would be paid when due. Similar
writings were secured from other makers. The safes were not pat-
ented in entirety, and were not new to the markets: *Held,* that in
an action on the notes a verdict in favor of defendant was sustained
by the evidence, on the ground that plaintiff was not an innocent
purchaser, without notice of the fraudulent representation.

PATENTS—FRAUD—RECORD OF PATENT OFFICE. Where a purchaser of a
patent right claims that he was induced to purchase by fraudulent
representations of the seller, the representations of the seller as to
what was covered by the patent are admissible, though, by search-
ing the records of the patent office, the buyer might have discov-
ered the fraud.

IDEM—IDEM—DESIGNS AND INVENTIONS DISTINGUISHED. Where the seller
    of a patent right represented to the purchaser that the articles were
    patented in their entirety, and they were in fact only design patents,
    the representation is false, in that patents for design differ from
    patents for invention, in that they have reference to appearance,
    rather than invention.

IDEM—IDEM—NOTES—EVIDENCE. Where, in an action on notes, the defense
    was that they were obtained by fraudulent representations of the
    payee in selling articles for which the notes were given, testimony
    showing that at about the same time the payee made similar repre-
    sentations to other persons in the same locality was admissible.

APPEAL from the Second Judicial District Court, Washoe
County; *G. F. Talbot*, Judge, presiding.

Action by B. F. Swinney against W. H. Patterson. From
a judgment in favor of defendant, and an order denying a
motion for a new trial, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Benjamin Curler*, for Appellant:

I. There was no fraud perpetrated by Rosser and Sher-
man upon respondent. Where a party can protect himself
by ordinary care and prudence, he must do so, and with full
means of knowledge. In this case the respondent could have
searched the patent office records and discovered the fraud.
(1 Story, Eq. Jur., 3d ed., 199; *Brown* v. *Leach*, 107 Mass.
364; *Long* v. *Warren*, 68 N. Y. 426; *Mamlock* v. *Fairbanks*,
46 Wis. 415; *Poland* v. *Brownell*, 131 Mass. 138; *Reynolds* v.
*Palmer*, 21 Fed. 433; 1 Benjamin on Sales, 4th Am. ed., 641;
*Veasey* v. *Daton*, 3 Allen (Mass.) 380; *Farrow* v. *Anderson*,
69 Ala. 96.)

II. No fraud was perpetrated by Rosser and Sherman
upon the respondent, for the reason that, at the time they
sold the territorial rights to respondent, a design patent had
been issued by the United States government for the calen-
dar clock safe, and afterwards a patent was issued to the
parties that Rosser and Sherman represented. (*Judson* v.
*Cope*, 1 Band. (U. S.) 327; *Miller* v. *Smith*, 5 Fed. Rep. 359;
*Carter* v. *Baker*, 1 Saw. (U. S.) 512.)

III. If Rosser and Sherman did procure the said promis-
sory notes through fraudulent representations, the evidence
all shows that the notes were negotiable promissory notes,

and that the appellant purchased them in the usual course of business before they became due, and that he paid a valuable consideration for said notes, without notice or any knowledge or any equities existing between the original parties, or of any fraud having been used in procuring the execution of the notes. The respondent made, executed and delivered a receipt to V. O. Rosser, which was delivered to appellant before he purchased the notes in question, which shows that the respondent had received everything promised by the Calendar Clock Safe Company, in which he said the notes would be paid when due.

IV. The only evidence in the whole case that shows that the appellant had anything to do with Rosser or Sherman is a letter written by appellant to C. T. Bender, cashier of the Washoe County Bank, Reno, Nevada, in which he hands a check of $1,000, to be placed to the credit of V. O. Rosser, and in said letter he states that Rosser represents the Calendar Clock Safe Company, and that J. M. Curtice is the owner, and if he should see fit to examine the safe, which Mr. Rosser is placing before your people, that he was sure that he would agree with him, that it is a piece of kitchen furniture which almost any family could well afford to have.

V. The holder of negotiable paper, endorsed before maturity, is supposed to be the *bona fide* owner of the same, and all intendments are in favor of his right. The safety and convenience of the commercial community depend on this rule, and it is not to be defeated by any suspicions. (*Himmelman* v. *Hotaling*, 40 Cal. 111; *Steinhart* v. *Boker*, 34 Bar. 442; *Bedell* v. *Herring*, 77 Cal. 572; *Palmer* v. *Goodwin*, 5 Cal. 459; *Poorman* v. *Mills*, 35 Cal. 120, 39 Cal. 349.)

VI. The court, under the objection of counsel for appellant, allowed the witnesses, Patterson, Morrill, Bender, and others, to testify to what Rosser and Sherman did and said in procuring the notes from respondent, and divers other notes; and the court, in the presence of the jury, talked about "frauds" and "the plaintiff was a participant in said fraud," and "slight circumstances connected therewith showing any fraud," and "you offer now, then, to prove similar, or other, transactions of similar fraud," until the jurors' minds were so poisoned and prejudiced against the appel-

lant that they could not impartially consider the evidence on the part of the appellant or the instructions given by the court.

*Torreyson & Summerfield,* for Respondent:

I. A very casual inspection of the transcript on appeal will show that the real issue in the action was whether appellant received the notes under such circumstances and conditions which are evidentiary in law as would justify the jury in imputing to him at the time of their acquirement such knowledge of the original fraud in their procurement as to make him a transferee *mala fides* occupying the same legal status as the transferrer.

II. *Caveat emptor* does not apply in cases of fraud and misrepresentation to the effect that an article is patented when in fact it is not. The purchaser of patent rights may rely upon the representations of the vendor, and is not required to investigate the records of the United States Patent Office to verify the representations made to him. The authorities cited by appellant in support of his contention that ordinary care and prudence required an examination of the records of the patent office, to verify the truth of the representations made to him that the calendar clock safe was in its entirety a patented article, do not support his position. All that respondent has been able to find at the time of writing this brief appertain entirely to cases of the sale of tangible personal property where the vendee had easily accessible opportunity to examine the amount and quality of the property purchased. In such cases it is admitted that the wholesome rule of *caveat emptor* applies. The authorities all, however, seem to hold the contrary in transactions relating to patent rights and the scope of patents. "A purchaser of a patent right may rely on the representations of the seller as to what is covered by the patent." (*Rose* v. *Hurley,* 39 Ind. 77; *David* v. *Park,* 103 Mass. 501; *Gaty* v. *Holcomb,* 44 Ark. 216; *Tabor* v. *Peters,* 74 Ala. 90; *Page* v. *Dickinson,* 28 Wis. 694; *Fargo Co.* v. *Electric Co.,* L. R. A. 593, author's note; *Hicks* v. *Stevens,* 121 Ill. 186.)

III. Appellant's contention, that, because a design patent had been issued at the time the territorial rights were dis-

posed of to respondent, no fraud was perpetrated upon respondent, cannot be sustained. A design patent has reference only to configuration, shape, appearance, and ornamentation, and is not dependent upon utility and novelty as in cases of mechanical patents. (U. S. Rev. Stats., secs. 4929–33; *Smith* v. *Whitman Saddle Co.*, 148 U. S. 674; *Dobson* v. *Dorman*, 118 U. S. 10; *Cahoone* v. *Rubber Co.*, 45 Fed. 682; *Untermeyer* v. *Freund*, 37 Fed. 342.)

IV. The record on appeal affirmatively shows that at the time appellant's assignor and copartner, Sherman, represented to respondent that the calendar clock safe was patented in its entirety, and it also shows affirmatively that at the time the representations were made to respondent there was only an application for patent pending, and that the principal features of the application were rejected on four successive rulings of the commissioner of patents. The letters patent were simply for "improvement in kitchen safes," almost insignificant in nature, and as much unlike the pending application existing at the time the misrepresentations were made to respondent as day is unlike night. It will readily be perceived from the transcript on appeal that the calendar clock safe, which was represented to respondent as being patented in its entirety, was in fact patented only in the trivial particular of the receptacle and position of an ordinary clock.

V. The holder of negotiable paper must acquire it, in order to maintain the status of innocent purchaser for value, without notice of fraud, defect of title, illegality of consideration, or other fact which impeaches its validity in his transferrer's hands; and the word "notice" in this connection signifies the same as "knowledge." Knowledge of fraud or illegality impeaches the *bona fides* of the holder, or at least destroys the superiority of his title, and leaves him in the shoes of the transferrer. (*Hanauer* v. *Doane*, 12 Wall. 342; *Fisher* v. *Leland*, 4 Cush. 456; *Norvell* v. *Hudgins*, 4 Munf. 496; *Kasson* v. *Smith*, 8 Wend. 437; *Skidling* v. *Warren*, 15 Johns. 270; *Crampton* v. *Perkins*, 65 Md. 24; *Smith* v. *Bank*, 74 Tex. 458; *Mace* v. *Kennedy*, 68 Mich. 389; *McNamara* v. *Gargett*, 68 Mich. 454; *Bank* v. *Edholm*, 25 Neb. 742; 1 Dan. Neg. Insts., par. 789; *Limerick Nat. Bank* v. *Adams*, 40 Atl.

166; 1 Daniel, Neg. Insts., par. 801 and citations; *Gruber* v. *Baker*, 20 Nev. 476.)

VI.   Some of the many convincing evidentiary circumstances closely connecting appellant with the frauds perpetrated upon respondent are as follows:   (1) Appellant's letter to C. T. Bender of July 19, 1897, recommending his assignor and the calendar clock safe.   (2) Purchase of several thousand dollars in notes on January 25, 1898, and sending them to the Washoe County Bank for collection the next day, January 26, 1898.   (3) The purchase of notes almost due against parties whom he had by previous investigation found to be reliable and solvent, at a discount of 25 per cent.   (4) His six years acquaintanceship with Rosser, his fraudulent assignor.   (5) His investigation of the financial responsibility of respondent and other makers of notes before purchasing.   (6) His previous purchase of promissory notes from Rosser.   (7) His favorable acquaintanceship of Rosser.   (8) His examination of the Patterson receipt.   (9) That the notes were payments relating to the calendar clock safe.   (10) At the time of purchasing the notes he had a calendar clock safe in his own home and must have known that the same was marked "Patented."   (11) In his letter to C. T. Bender of July 19, 1897, he represented Rosser as "representing the Calendar Clock Safe Company," yet he purchased a large number of promissory notes payable to V. O. Rosser.   (12) He knew that Mr. Curtice had previously patented the standard cabinet, a similar article to the calendar clock safe.

VII.   Appellant argues that respondent's receipt contained in page 13, vol. 2, of transcript on appeal is conclusive against respondent upon the question of his liability.   A mere receipt is always open to explanation and is never conclusive against the signer.   Respondent's testimony shows conclusively that the receipt was signed in a hurry and was intended only to embrace certain safe covers entirely outside of the original agreement.   This evidence is uncontradicted and is not open to dispute.   The receipt is itself a badge of fraud.   It is so unnatural in its connection with the original transaction with respondent that it can have no other significance than

a guilty attempt to secure a careless ratification of the original fraud.

VIII. The court did not err in admitting the evidence of Morrill, Bender, Ferrell, Robinson, Westerfield, Stoddard and Chamberlain, to show similar frauds by appellant's assignor at about the same time and relative to the same subject matter and fraudulent misrepresentations. The authorities are overwhelming in upholding the admission of evidence of similar frauds, collateral in nature, but at about the same time, and relating to the same subject matter, in order to show the *quo animo* of the perpetrator. (Gillett on Indirect Evidence, 80; 1 Jones on Evidence, 80; *Nicholls* v. *Baker*, 75 Me. 334; *Jordan* v. *Osgood*, 109 Mass. 461; *Heath* v. *Page*, 63 Pa. St. 108; *Adams* v. *Kenney*, 59 N. H. 133; *Day* v. *Stone*, 59 Tex. 612; *Moline Co.* v. *Franklin*, 37 Minn. 137; *Ferbrache* v. *Martin*, 32 Pac. 252.)

IX. The sanctity of commercial paper in the hands of an innocent purchaser for value before maturity is admitted. But it is respectfully submitted that the trend of decisions in cases where it is fairly apparent that the transfer of commercial paper was in furtherance of fraud, or even attended by strong suspicious circumstances, is to the effect that the aid of the courts cannot be invoked successfully.

By the Court, BELKNAP, J.:

Plaintiff claimed to recover judgment upon twelve promissory notes, of the aggregate value of $1,472 03, made payable to the order of V. O. Rosser, and by him indorsed to plaintiff for value before maturity. The answer admits the execution of the notes, but alleges want of consideration, by reason of fraudulent representations by Rosser and one G. H. Sherman, and charges fraud and conspiracy by plaintiff, Rosser, Sherman, and others, in obtaining them. A jury found for defendant. Plaintiff appeals.

The evidence showed that plaintiff had sent the following letter to Mr. C. T. Bender, cashier of the Washoe County Bank, at Reno:

"Kansas City, Mo., July 19th, 1897. C. P. Bender, Esq., Cashier, Reno, Nevada—Dear Sir: I herewith hand you our

check on New York for $1,000, for the credit of Mr. V. O. Rosser, who will be in your place some time soon, representing the Calendar Clock Safe Co., and there may be some inquiry as to his company. I beg to advise that the same is owned by Mr. J. M. Curtice, of this city, who is amply able to carry to completion any contract he proposes to make. In fact, he stands first-class here, and is one of our most enterprising citizens. If you should see fit to examine the safe which Mr. Rosser is placing before your people, I am sure you will agree with me that it is a piece of kitchen furniture which almost any family could well afford to have. Mr. Rosser is a first-class gentleman, and I bespeak for him and the parties with him your best treatment. Yours very truly, E. F. Swinney, Cashier."

Soon after the receipt of this letter by Mr. Bender, Rosser, the payee of the notes, and Sherman appeared in Reno, where they were unacquainted, and established themselves in the business of selling calendar clock safes and territorial rights thereto; representing to defendant and others that the calendar clock safe was a patented article, in its entirety, and new to the markets of the Pacific Coast. By reason of representations of this nature, they obtained the promissory notes of the defendant and other citizens of Reno and its vicinity, in exchange for calendar clock safes and territorial rights for their sale, of the aggregate amount of about $10,000. Before the purchase of the notes, Rosser gave to appellant the following paper writing:

"Received of the Calendar Clock Safe Co. four calendar clock safes, for samples, together with order blanks; being everything promised in a transaction had with them wherein I executed notes payable to the order of V. O. Rosser, which will be paid when due. W. H. Patterson."

Appellant ascertained to his satisfaction, before purchasing, that defendant and all others that had signed similar notes at about the same time, and for a similar consideration, were entirely solvent. Upon these facts appellant purchased of Rosser all of these notes, amounting to about $10,000 in value, at a discount of 25 per cent, taking at the same time an assurance similar to the receipt above set forth from each signer. It was shown that the calendar clock

safe was not a patented article, in its entirety; that a mechanical patent had issued therefor, embracing only the receptacle for an ordinary clock; that a design patent had been issued for it; that the word "patented" was marked upon all calendar clock safes; that appellant had one in his home in Kansas City; that the calendar clock safe was not new to the markets of the Pacific Coast.

According to the testimony, it must be admitted that Rosser's representations to defendant were fraudulent, and as between them the notes would be voidable. Appellant, however, claims that he is an innocent purchaser, without notice of any equities existing between the original parties. The question is whether the testimony supports the contention. The letter to Mr. Bender was intended and used as a general and favorable introduction of Rosser, and the scheme which he and Sherman afterwards presented to defendant and others, and tended to show appellant's interest in their operations—not necessarily a guilty interest; but, when appellant's subsequent ownership of the notes is coupled with the statements of the letter, there was sufficient testimony to support the verdict.

Further support may be found in the reiteration of the promise to pay the notes at maturity. This paper was signed by defendant at the request of Rosser and Sherman in their hurried departure for Missouri. The reiteration of the promise occurred a few days after the execution of the notes, and, before the discovery of the falsity of the representations. Under the circumstances, it was an unusual act, and so unnecessary to support a transaction that up to that time had not been questioned, that it may have excited suspicion, and been considered evidence tending to support the defense. The further fact may be noticed that neither Rosser nor Sherman appeared at the trial. A commission to take Rosser's testimony was issued at the instance of defendant, but the notary to whom it was directed returned that Rosser could not be found.

A question made at the trial was whether the defendant had the right to rely upon representations of the vendor that the calendar clock safe was patented in its entirety.

The rule of law governing this question is well stated by

the court of appeals of New York in *Mead* v. *Bunn*, 32 N. Y. 280, as follows: "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

Under this rule it has been decided that the representations of the seller of a patent right are admissible to show what is covered by the patent, although by searching the records of the patent office the buyer might have discovered the fraud. (*David* v. *Park*, 103 Mass. 502; *Rose* v. *Hurley*, 39 Ind. 77; *Tabor* v. *Peters*, 74 Ala. 90; *Gaty* v. *Holcomb*, 44 Ark. 216; *Page* v. *Dickerson*, 28 Wis. 694.)

It is claimed, however, that this objection is obviated by the issuance of a design patent.

The authority for patents for designs is found in section 4929, Rev. St. U. S., which provides that: "Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original design for a manufacture, bust, statue, alto-relievo, or bas-relief; any new and original design for the printing of woolen, silk, cotton, or other fabrics; any new and original impression, ornament, patent, print, or picture to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture; or any new, useful, and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication, may, upon payment of the fee prescribed, and other due proceedings had the same as in cases of inventions or discoveries, obtain a patent therefor."

The difference between patents for designs and those for inventions or discoveries is stated by Judge Nixon in *Theberath* v. *Trimming Co.*, 15 Fed. 246, as follows: "Patents for designs differ from patents for inventions or discoveries in this respect: That they have reference to appearance, rather than utility. Their object is to encourage the arts of decoration, more than the invention of useful

products.  A picture or design that merely pleases the eye is a proper subject for such a patent, without regard to the question of utility, which is always an essential ingredient in an invention or discovery patent."

There is, therefore, no foundation for the claim that a design patent fulfills the representations made by the vendor that the article was patented in its entirety.

For the purpose of showing the fraudulent representations made by the vendors, testimony was admitted showing that, at about the same time they represented to other persons in or about Reno that the calendar clock safe was a patented article in its entirety, they were empowered to sell county rights in the counties of the State of California, and that the invention was entirely new to the Pacific Coast.  These representations were so closely connected with those made to the defendant that it was proper for the jury to consider the intention actuating the vendors, and for that purpose the evidence was admissible.

" It is generally true that contemporaneous frauds may be proved when they tend to show a fraudulent intent in the particular transaction under investigation.  In the numerous cases in which this question has been considered, there may be slight differences in result, not entire uniformity in deciding in what cases one fraud may properly be said to make manifest the intention which pervades another transaction; but the rule of evidence certainly goes to this extent, as stated in *Jordan* v. *Osgood,* 109 Mass. 461:  That another act of fraud is admissible to prove the fraud charged, when there is evidence that the two are parts of one scheme of fraud, committed in pursuance of a common purpose." (*Nichols* v. *Baker,* 75 Me. 337.)

Judgment and order denying motion for new trial affirmed.