## CRAIG *vs.* WARD and CLARK.

When it appears that the defendant was not, and could not have been, misled by a variance between the complaint and the proof, the variance may be disregarded, without amendment.

An action was brought by R. against W., C. and others, to have a mortgage, executed by D. to W., decreed void on the ground that it was fraudulent and invalid, and to have the premises therein described sold and the avails applied in satisfaction of a mortgage held by R. During the pendency of that action, Craig became the purchaser and assignee of the said mortgage, and brought this suit, against W. and C. to recover damages for false and fraudulent representations made by W. and C., by which he was induced to purchase the D. mortgage of them. *Held* that Craig having become the purchaser of the mortgage during the pendency of the action brought by R. became bound and concluded by the judgment therein, the same as though he had

36b    377
37 Mis²479

Craig *v.* Ward.

been a party to the record, as a co-defendant with W. and C.   That in regard to the subject matter of both actions he stood in legal privity with W. and C., and the questions in respect to the validity or invalidity of the mortgage, by reason of the fraud, were identical.

Accordingly *held* that the judgment record in the suit brought by R. was legitimate evidence, in the present suit, for the purpose of establishing the fraud, and its effect upon the validity of the mortgage as a lien or incumbrance upon the land.

But that this being an action for fraud, Craig was bound to prove, by other evidence, that W. and C. practiced a fraud upon him, in the transfer of the mortgage.

A party making a representation false in fact, renders himself liable, in an action for fraud, although he did not actually know the representation to be false, at the time.

If a party makes a material representation, without knowing whether it is true or false, and it turns out to be false, an action lies for the fraudulent misrepresentation.

ON the 24th of September, 1855, the defendant Ward assigned to the plaintiff, by a writing under seal, a bond and mortgage executed to Ward by Elisha P. Davis, dated the 6th of that month, conditioned to secure the payment of $2000 in five years from date, with interest semi-annually— the mortgage covering about 120 acres of land in Clarkson, Monroe county.   The plaintiff paid $1500 therefor, by two checks, one in favor of the defendant Clark for $800, the other in favor of the defendant Ward for $700.   The plaintiff was applied to, to purchase the bond and mortgage by the defendant Clark, who professed to act in behalf of Ward, and who, after the purchase was agreed upon, delivered the assignment to the plaintiff, and received the checks for the consideration.   In the negotiation for the sale, Clark represented to the plaintiff that the mortgage " was a bona fide mortgage, well secured, as straight as a string—there was no usury or other legal defense to it ;" that " Ward had advanced $2000 for it ;" " that Davis had a clear title to the land, and this was the first incumbrance ;" " that the mortgage was all right and straight in every particular ; that it was the first mortgage."   In the written assignment, the defendant Ward covenanted that there was unpaid on the bond and mortgage

$2000, and interest from date; and that there was no usury or other defense in the mortgage; and certified that he paid to Davis the whole consideration, $2000, and had good right and lawful authority to sell the same. The plaintiff believed the representations to be true, and was induced by them to purchase the bond and mortgage. The only title which Elisha P. Davis had or claimed to the mortgaged premises, was acquired by his purchasing the premises at a sale on a statute foreclosure, by advertisement, of a mortgage thereon, executed by Henry Leiter to Conrad B. Lewis on the 6th of April, 1850, and by Lewis assigned to Stephen Merritt, and by Merritt to George T. Davis, in whose name the foreclosure proceedings were conducted. The sale was on the 18th of August, 1855, Elisha P. Davis becoming the purchaser at $455. The value of the premises was then $5400. There were several mortgages on the premises, subsequent to the Leiter mortgage, at the time of the mortgage sale.

On the 7th day of September, 1855, Elizabeth M. Rathbone, who held a mortgage on the premises executed the 7th of March, 1854, for $1600, commenced an action in this court, to have the mortgage sale under the Leiter mortgage, and the mortgage by Elisha P. Davis to the defendant Ward, declared fraudulent and void, and to foreclose her mortgage, making George T. Davis, Elisha P. Davis, and the defendants in this action, and others, parties defendants. The complaint in that action was filed in the clerk's office of Monroe county, and the summons was served on the defendants in this action on the 7th of September, 1855. The defendants in this action put in their answers in the action last aforesaid; and the issues were referred to a referee for trial and decision. The referee reported that the sale under the Leiter mortgage was void for defects in the proceedings for the sale; also for fraud, to which the defendant Clark, George T. Davis and Elisha P. Davis were parties; that the mortgage of Elisha P. Davis to the defendant Ward was without consideration and fraudulent. This action was commenced

the 23d of November, 1859, to recover damages for the fraud of the defendants in the sale to the plaintiff of the Davis mortgage.

It was proved at the trial that Elisha P. Davis was insolvent when the action was commenced.

The plaintiff, to show that the mortgagor had not a good title, and that the mortgage was not a lien, gave in evidence the report of the referee and the judgment founded thereon in the action brought by Elizabeth M. Rathbone against William Stebbins, the defendants in this action, and others. The defendants objected to the introduction of this report and judgment roll, which objection was overruled by the court; and the court held that the record was conclusive evidence of the facts directly adjudicated thereby or necessarily involved in the determination thereof. That all the facts found by the report of the referee were conclusively established as against the defendants in this action, and that it was conclusive evidence in this action that the bond and mortgage were void for want of consideration. The defendants' exceptions to the admission of this evidence, and to the ruling of the court as to the effect of it, formed one class of exceptions on which the defendants relied for a new trial.

The court charged the jury that if they should find for the plaintiff they would find the sum of $1500, with interest from January 1st, 1859, the interest having been paid to that time. This was also excepted to, and these exceptions constituted another ground of the motion for a new trial. The court charged the jury, among other things, as follows : That although the plaintiff could not recover in this action on the covenant contained in the assignment, alone, he could, by showing that the same was untrue at the time when made, and known to be so by the defendants. To which charge the counsel for the defendants excepted. The court further charged the jury, that if the representations made to the plaintiff were untrue, although the defendant Ward did not know they were so, yet if he was informed and knew of facts

Craig *v.* Ward.

which, in the exercise of common sense and ordinary prudence, were sufficient to put him upon inquiry, and would have led him to a knowledge of the condition of the title, he would be liable, the same as if he had actual knowledge. To which charge the counsel for the defendant Ward excepted.

The jury rendered a verdict for $1723.13, and the court ordered the motion for a new trial to be heard at the general term in the first instance.

*T. R. Strong,* for the plaintiff.

*W. F. Cogswell,* for the defendants.

*By the Court,* JOHNSON, J. The action is brought to recover damages for false and fraudulent representations made by the defendants to the plaintiff, by which he was induced to purchase of them a certain bond and mortgage executed by one Davis, on the 6th of September, 1855.

The first question raised by the defendants' counsel is upon the exception to the ruling at the trial admitting the evidence of the representations of the defendant Clark that the mortgage was a bona fide mortgage well secured, and that the mortgagor had a clear title to the land, and this mortgage was the first lien, and that there was no usury or other defense to it. This evidence was objected to by the defendants' counsel on the ground that there was no averment of any such representation, in the complaint, and the evidence was therefore immaterial and incompetent. This raises simply the question of variance between the pleadings and proof. This particular misrepresentation is not specifically alleged in the complaint. The complaint, on this subject, avers, that the defendants stated and represented " that the said mortgage was a good and valid security in the hands of said defendant William H. Ward," and " that there was no usury therein or other defense thereto." This is a variance which might have been material under the former system of

practice, but cannot be regarded as such under the code. No variance between the allegation in a pleading, and the proof, can now be deemed material, unless it have actually misled the adverse party, to his prejudice. (*Code*, § 169.) When it has not not thus misled, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs. (*Id.* § 170.) And this applies to all actions and defenses. (*Catlin* v. *Gunter*, 1 *Kern.* 368.) When it appears that the party was not, and could not have been thus misled, the variance may be disregarded without amendment. (*Bennett* v. *Judson*, 21 *N. Y. Rep.* 238. *Harmony* v. *Bingham*, 1 *Duer*, 209.) This I think necessarily results from the provisions of the code. There is nothing in the case to show that the defendants have been misled by this evidence, to their prejudice. It was directly in support of the cause of action alleged, to wit, fraudulent misrepresentations in regard to the subject of the sale. It is not a case of failure of proof, of the cause of action, provided for by § 171 of the code.

A more important and difficult question arises upon the question of the introduction of the judgment record in evidence, in the action between Eliza M. Rathbone, plaintiff, and these defendants, and others, who were also defendants, for the purpose of establishing the matters therein determined. The object of that action, as appears by the record, was to have the mortgage in question decreed void on the ground that it was fraudulent and invalid; and to have the premises described therein sold, and the avails applied in satisfaction of the plaintiff's mortgage. The plaintiff became the purchaser and assignee of the mortgage in question, during the pendency of that action, and thus became bound and concluded by the judgment, the same as though he had been a party to the record. (*Harrington* v. *Slade*, 22 *Barb.* 161. *Sedgwick* v. *Cleveland*, 7 *Paige*, 287. *Cook* v. *Mancius*, 5 *John. Ch.* 89. *Edwards on Parties*, 79.) He stood the same as though he had been actually a co-defendant, with

Craig *v*. Ward.

these defendants, in that action. They were all concluded by the judgment in that action, as between them and the plaintiff, and all persons claiming under the plaintiff by title subsequent. But the question here arises whether the judgment in that action is conclusive between the defendants in it, in another action between themselves, involving the same matters there adjudicated. I think there can be no doubt that it is so, as far as the matter in the two actions is identical, upon well established principles, although I do not find that the precise question has ever been directly presented and adjudicated. A familiar case is that of an action brought by a third person against the vendee of a chattel, claiming title. If the vendor appears and defends, or if the vendee gives him notice so that he has the opportunity to do so, the judgment against the vendee is conclusive in an action by the latter against his vendor, on the implied warranty of title, although the vendor was no party to the action. And the rule is the same in regard to all persons who stand in such a relation to each other that the matters determined in an action brought by a third person against one, will necessarily again come in question, in proceedings between him and the other, as vendees, assignees, grantees, sureties, persons acting under an agreement for indemnity, and the like. (*See American notes to Duchess of Kingston's case*, 2 *Smith's Lead. Cas.* 552, 553, *and cases there cited.*) It is not necessary that the parties should be the same, in the second action, or that they should occupy the same relative positions, of plaintiff and defendant, as in the former action, or that the form of action should be the same. The test is whether the party against whom the former judgment is sought to be used was, or had an opportunity of being heard, and the matter litigated is the same, and the parties are in privity as to such matter. (*Castle* v. *Noyes*, 14 *N. Y. Rep.* 329. *Doty* v. *Brown*, 4 *Comst.* 71. *Kingsland* v. *Spalding*, 3 *Barb. Ch.* 341. *Embury* v. *Conner*, 3 *Comst.* 511. *Ehle* v. *Bingham*, 7 *Barb.* 494. *Cowen & Hill's Notes*, 824, 975.) It is unnecessary to multiply

authorities upon a rule so well established. It cannot be denied that the plaintiff in regard to the subject matter of both actions, stands in legal privity with the defendants. And it seems to me equally clear that the questions in respect to the validity or invalidity of the mortgage in question, by reason of the fraud, are identical. The question of the fraud, and its effect upon the validity of the mortgage as a lien or incumbrance upon the land, was then tried and determined, and that precise question is in litigation here. It may be that the record, when introduced, established only one fact, which the plaintiff was required to prove, in order to maintain his action, but to whatever extent it went as an adjudication on the questions here tried, the plaintiff was entitled to the benefit of it, on this trial.

This being an action of fraud, the plaintiff of course was required to prove, in some way, that the defendants practiced a fraud upon him, in the transfer; and this fact the record itself would not establish, because that fraud was not litigated in the other action. But I do not understand from the case that it was introduced for that purpose, or that any such effect was given to it as evidence. The representations were made out by other evidence, and the previous fraud only, and consequent invalidity of the mortgage, established by the record. For this purpose and to this extent it was strictly legitimate. This was the matter directly adjudicated, and necessarily involved, in the determination in that action, and that was the only effect the judge gave to it in his charge. This covers both the exception to the admission of the evidence, and to the charge of the judge on the subject of its conclusiveness, neither of which was well taken. Had the representations proved been contained in the covenant in the assignment, and the action been brought on the breach of the warranty, there can be no doubt, I think, that the record would have been entirely conclusive as evidence of the breach. It is no less conclusive in this action as to the fact that the representations were untrue. The form of the ac-

Craig *v.* Ward.

tion does not affect the competency of the evidence, if the fact it establishes is pertinent, nor its conclusive character in regard to such fact. The action for fraud can be maintained for a false representation in a written instrument, as well as for one made verbally, and there is nothing in the exception to that part of the charge.

The exception to that part of the charge as to the liability of the defendant Ward, if the representations were untrue, although he did not know they were so at the time, but knew facts which in the exercise of ordinary sense and prudence would have led him to such knowledge, is not well taken. It does not involve the proposition of his liability, in case he actually believed the representations to be true at the time. It carefully excludes that fact, and only raises the question as to whether a party making a representation false in fact, should actually know it to be so, to render himself liable, in an action for fraud. That he is liable, or may be, in such a case, is fully established by the decision in *Bennett* v. *Judson,* (21 *N. Y. Rep.* 238,) before cited.

Besides, in this case, the defendant Ward was bound, not only by the representations, but by the knowledge of their falsity, of his agent Clark, who made most of them. If a party makes a material representation, without knowing whether it is true or false, and it turns out to be false, the action lies for the fraudulent misrepresentation.

In respect to the charge on the subject of the measure of damages, conceding it to be erroneous, it is difficult to see how it can be pretended that the error was prejudicial to the defendant. There is nothing in the case to show that the verdict could have been less, had the rule now insisted upon by the defendants' counsel been laid down by the court as the true measure of damages. On the contrary, there is every reason to suppose it would have been much larger. The exception is of the most general character; and no request was made to the court to give any different instructions on that subject. If the error was beneficial to the defendants, the

exception is unavailing; and as nothing is shown or suggested by the defendants' counsel that it was, in fact, or could have been otherwise, it will not be presumed that it was so.

On the whole, I am satisfied that there was no material error committed, either in the charge or in the rulings during the progress of the trial, or in the refusal to charge as requested by the defendants' counsel. A new trial must therefore be denied.

[MONROE GENERAL TERM, March 3, 1862.   *Johnson, Smith* and *Welles,* Justices.]