## BARRETT vs. WESTERN.

The principle, laid down in Bennett v. Judson (21 N. Y. 238,) and Craig v. Ward (36 Barb. 377,) that a party making a representation false in fact renders himself liable, in an action for fraud, although he did not actually know the representation to be false, at the time, does not apply to cases of fraud and deceit in the sale of personal property.

Hence, in an action to recover damages for false representations made by a purchaser of personal property, as to the value of a note of a third person, transferred to the vendor in part payment of the price, the plaintiff is bound to prove that the defendant actually knew of the falsity of the representations made by him.

In such an action, it is not necessary, in order to entitle the plaintiff to recover, to prove that the representation as to the ability of the maker was his sole inducement to take the note. It is enough that it was a material part of the inducement—that without it he would not have parted with his property.

In such an action, it is competent for the defendant to testify as to his *belief* respecting the solvency of the maker of the note transferred by him; that being only another mode of saying he had no intent to defraud. And he has the right to have the jury pass on the question of fraud, in view of his denial of it on oath.

APPEAL, by the defendant, from a judgment of the Lewis county court, in an action originally commenced in a justice's court. The opinion states the facts.

*Abram I. Mereness*, for the appellant.

*L. W. Fiske*, for the respondent.

*By the Court*, MULLIN, J. The defendant purchased of the plaintiff a wagon and buggy, at the price of $175, and offered in payment therefor the note of one Rôbert Simons for $150, payable in six months, with interest, to the defendant or bearer, and $25 in money, representing the note as good and against a good man. The plaintiff was ignorant of Simons's circumstances, and received the note relying upon the representation of the defendant that it was good.

The defendant borrowed the note of Simons, agreeing to pay it at maturity. Before the transfer to the plain-

tiff he (the defendant) was told by Simons that he was poor and unable to pay the note. It does not appear that he had any other knowledge of Simons's circumstances.

The action was commenced before a justice of the peace of Lewis county, to recover damages for the false and fraudulent representation as to the value of the note. The case was carried by appeal to the Lewis county court, and there retried by a jury. The plaintiff had a verdict for $179.36. The defendant moved for a new trial, and the same was denied.

The representations that the note was good—that the maker was good—were clearly proved. They were unquestionably material. It only remained for the plaintiff to prove that the note was not good, and that the defendant knew it, when he made the representation. The only evidence of the defendant's knowledge of the falsity of the representation was the statement to him by Simons himself that he was a poor boy, and not able to pay the note. And it would seem by the other evidence that Simons's representation as to his condition was true.

It is said by the plaintiff's counsel that if it were true that there was no sufficient evidence of the defendant's knowledge of the untruth of the representation, yet it being shown that he did not know whether it was true or false when he made it, the representation was just as fraudulent as if he had known it to be false. (*Bennett* v. *Judson,* 21 *N. Y.* 238. *Craig* v. *Ward,* 36 *Barb.* 377.) But the General Term in this district holds that the doctrine of these cases does not apply to cases of fraud and deceit in the sale of personal property, and hence the plaintiff was bound to prove that the defendant actually knew of the falsity of the representation made by him.

The defendant's counsel seems to be of the opinion that because his client indorsed the note, he is not liable for the fraudulent representation. I do not perceive

Barrett *v.* Western.

why that should alter his liability. Suppose he had given his own note, falsely representing himself to be able to pay, whereby the plaintiff was defrauded; could not the plaintiff sue, and recover his damages by reason of the fraud?

The condition imposed by the plaintiff, that the defendant should indorse the note, raised a question for the consideration of the jury, in passing on the question whether the plaintiff relied on the representation of the defendant as to the ability of the maker, in taking the note for the property.

If the responsibility of the maker was the inducement to take the note, why insist upon the indorsement of the defendant? But they have not deemed it of sufficient weight to overcome the other evidence on the question; and it was for them to give it such weight as it was entitled to.

It was not necessary, in order to entitle the plaintiff to recover, to prove that the representation as to the ability of the maker was his sole inducement to take the note. It is enough that it was a material part of the inducement—that without it he would not have parted with his property. (*Addington* v. *Allen*, 11 *Wend.* 374, 381. *Shaw* v. *Stine*, 8 *Bosw.* 157.)

I will briefly refer to some of the defendant's exceptions taken on the trial.

1st. The first is to the admission of evidence that the plaintiff relied on the defendant's representation as to the value of the note. This was one of the most important facts in the case to be proved by the plaintiff. He, of all men, knew best whether he relied on it. His statement did not conclude the jury; it was nevertheless competent.

2d. The next is as to proof by the plaintiff of a surrender of the note on the trial before the justice.

The action was brought upon the theory that the note was imposed upon the plaintiff fraudulently. If it was,

and was valueless, he could return the note and recover so much of the purchase price as it represented, as damages sustained by the fraud. He was bound to surrender the note, and it was necessary for him to prove the surrender.

3d. Evidence of the value of the property was objected to. It was admissible to establish a measure of damages. But if the face of the note was the measure of damages, the evidence could do the defendant no harm.

4th. The evidence as to the business of Simons was objected to. It was competent as a link in the chain of evidence to prove his inability to pay the note.

5th. The conversation between Miller, Simons and the defendant, at the barn occupied by the defendant, is objected to.

It is competent to show that the defendant, before he transferred the note to the plaintiff, was told by Simons that he was poor and unable to pay the note. The whole conversation was not material, but so much of it clearly was, and the admission of the residue could do the defendant no injury.

6th. Evidence of the defendant's belief as to the solvency of Simons was rejected, and the defendant excepted.

This is the only one of the exceptions as to which I entertain any doubt. The charge against him was proved, and he had to deny an intent to defraud in. making the representation ; and if the jury should find that the defendant believed Simons solvent the plaintiff must fail. Mere belief was, of itself, of no moment; but if he believed that Simons was solvent, then he only stated what he believed to be true. This was only another mode of saying he had no intent to defraud. This, the Court of Appeals holds, it is competent for the party accused of fraud to say, and he has the right to have the jury pass on the question of fraud, in view of his denial of it on oath.

He testified that Simons was reputed to be a man of property. If such was in truth his reputation in the neighborhood, it was competent to prove it, and it was then for the jury to say whether he made the representation on the strength of the representation of Simons's solvency, believing it to be true. If the jury should so find, the plaintiff could not recover. That the solvency or insolvency of a man may be proved by reputation see 1 *Cowen & Hill's Notes,* 702.

It is quite possible the verdict would have been the same had the evidence been received. But we cannot assume that it would. The question was for the jury; and not having been submitted to them the judgment should be reversed, and a new trial ordered.

[ONONDAGA GENERAL TERM, April 5, 1870. *Mullin, Morgan* and *Doolittle,* Jutices.]