THE BALTIMORE STEAM PACKET COMPANY *against* CORNELIUS K. GARRISON.

(Decided December 31st, 1875.)

The defendant contracted with plaintiff to sell a vessel and deliver her " free and clear of all liens and incumbrances of every kind and nature whatever." After the vessel had been delivered to the plaintiff, under this contract, she was seized under an execution on a judgment recovered in the courts of the State of Virginia, under a claim that she had been levied on under an attachment against the defendant, while the vessel was in his possession, and while he was the owner of her. The plaintiff notified the defendant of the seizure, and of the proceedings under which it was made, but he failed to make any opposition to the seizure, or to take any steps to have the judgment against him set aside, although, by the statutes of Virginia, there remained nearly a year's time within which he might have had the judgment opened and been let in to defend. The plaintiff took proceedings in the Virginia courts to defend its title to the vessel and have the attachment set aside, but failed in doing so, and, in order to release the vessel, was obliged to pay the assessed value of the defendant's interest at the time of the levying the attachment. In an action here against the defendant on his covenant to deliver the vessel free from liens and incumbrances : *Held,* that the judgment and proceedings in the Virginia courts were binding on the defendant, and their validity or correctness could not be inquired into, and that the defendant was liable for the amount the plaintiff was obliged to pay to discharge the lien, and also what it paid for counsel fees and expenses in the proceedings taken by it.

APPEAL by defendant from a judgment of this court, entered on the decision of Judge ROBINSON, after a trial before him without a jury.

This action was brought by the plaintiff against the defendant to recover the damages which had been suffered by the plaintiff, by reason of the breach of a covenant of warranty contained in an agreement entered into by the defendant with the plaintiff, for the sale and delivery by the defendant to the plaintiff of a steamer known as the " George Leary."

The facts as found by the judge at the trial were as follows :

The plaintiff, the Baltimore Steam Packet Company, was and is a Maryland corporation, engaged in the business of transporting freight and passengers between Baltimore, Maryland, and Norfolk, Virginia, transacting its business and having its property situated partly in Maryland and partly in Virginia.

In August, 1866, the Baltimore Steam Packet Company was known as " the old line of steamers." There was at that time another line of steamers plying on Chesapeake Bay, of which H. V. Tompkins was the general agent at Norfolk, known as " the new line of steamers," to which the steamer George Leary belonged.

By the terms of a certain agreement entered into on the 10th day of August, 1866, between the defendant, Mr. Garrison, and the plaintiff, the Baltimore Steam Packet Company, through Mr. Robinson, one of its directors, subject to ratification by the plaintiff, the defendant, in consideration of the sum of $240,000, to be paid him as in the manner provided in the agreement, " agrees to sell and deliver to the said Baltimore Steam Packet Company all and singular the steamer called the George Leary, now plying on Chesapeake Bay, between Baltimore and Norfolk, together with and including all the masts, &c.,      *      *      *      now on board of or annexed to the said George Leary, or thereto appertaining and belonging, the said George Leary to be free and clear of all liens and incumbrances of every kind and nature whatever, and to be delivered to the said Baltimore Steam Packet Company, at its wharves in the

city of Baltimore, within fifteen days after the ratification of this agreement by the Baltimore Steam Packet Company."

This agreement was ratified August 13, 1866.

On the 15th August, 1866, the plaintiff paid the defendant $60,000 in cash, and for the residue of the purchase money gave its promissory notes, which were all afterwards paid at maturity.

At the same time the defendant delivered to the plaintiff certain bills of sale of part interests in the steamer, executed by former part owners, previous to her becoming the property of the defendant Garrison, with the name of the transferee in blank. No other bill of sale was delivered by the defendant to the plaintiff. On the 15th August, 1866, the George Leary was at Norfolk, Virginia, in the possession and under the control of the defendant, and remained under his control (except in so far as she was under the control of the sergeant of that city under the attachments hereinafter mentioned), until the 9th September, 1866, when the defendant brought her from Norfolk to Baltimore, and there delivered her to the plaintiff at its wharves. The plaintiff thereupon obtained possession of the steamer, and employed her in its daily business of transportation between Baltimore and Norfolk, and in the course of such employment its title was attacked by the Norfolk & Petersburg R. R. Co., under an alleged lien by attachment obtained upon the vessel at Norfolk, Virginia, prior to her delivery to the plaintiff, and while she was the property of, and in the control and possession of the defendant Garrison. The facts with respect to the levy of the attachment were as follows: In August, 1866, before the delivery of the steamer, and while she was at Norfolk, in the possession of the defendant, two attachments were levied upon her at the suit of the Norfolk & Petersburg R. R. Co. From the first of these attachments the steamer was relieved by Garrison. From the second attachment she was not relieved.

The first attachment was levied on the 16th of August, 1866, under a proceeding *in rem*, instituted in the Circuit Court of Norfolk against the steamer, by the Norfolk & Petersburg R. R. Co., under the Virginia statute of January

The Baltimore Steam Packet Company v. Garrison.

20, 1866. The steamer was taken into the custody of the sergeant under this levy, and remained in his custody under this levy until after the levy under the second attachment, and until September 3, 1866, when the defendant Garrison gave a bond to discharge the attachment, and the steamer was thereupon released by the sergeant from the levy under it, and subsequently on the 7th of June, 1868, on a motion made in behalf of the defendant to quash the attachment, it was quashed and dismissed. Afterwards the defendant Garrison recovered damages, suffered by him as the owner of the steamer, by reason of her detention under the attachment, in a suit brought by him in the Supreme Court of New York, in which suit he claimed to have been the owner during the period of such detention. The second attachment (which constituted the breach of warranty complained of) was levied by the sergeant of Norfolk on the 17th day of August, 1866, while the steamer was still in his possession and custody under the first attachment, in an action then commenced by the Norfolk & Petersburg R. R. Co., against the defendant Garrison personally, to recover $200,000 damages.

This second attachment was issued and received by the sergeant, and was levied by him by the delivery of a copy of the writ to H. V. Tompkins, the general agent in charge of the steamer George Leary and the other steamer then constituting the "new line Baltimore steamers," Tompkins having been designated as being in possession of effects of, or owing debts to the defendant; but the sergeant did not take possession of the steamer under this attachment, because the bond required by § 8 of chapter 151 of the Virginia Code as a condition of taking possession under the levy, had not been given.

On the 3d day of September, 1866, the same day on which the defendant Garrison obtained the release of the steamer from the first attachment by giving a bond for that purpose, the plaintiff in the second attachment gave the requisite bond for the purpose of having possession of the steamer taken under the second attachment. The sergeant thereupon proceeded to the wharf to take the steamer in possession, but she had cast

loose from the wharf and was moving down the river, and therefore he could not take her in possession.

The steamer having thus escaped from the possession of the sergeant, was brought by the defendant Garrison to Baltimore, and was there delivered to the plaintiff, who received her in ignorance of the proceedings which had been taken, and of the levy which had been made under the last mentioned attachment.

The Norfolk & Petersburg Railroad company, the plaintiffs in the last mentioned attachment suit, thereupon proceeded against Garrison by publication of the summons in said suit, and at the expiration of the period for service by publication, Garrison having failed to appear in said action, had their damages assessed by a jury, and on the 25th day of June, 1868, recovered judgment against Garrison for the sum of $53,879 35, with interest from the 15th day of August, 1866.

The Norfolk & Petersburg Railroad Company, after the obtaining of said judgment, brought the present plaintiff, the Baltimore Steam Packet Company, into court by taking proceedings against it in the said Circuit Court for the sale of the steamer under the attachment in the suit against Garrison, in which said judgment had been obtained. Upon and after the institution of the proceedings, the Baltimore Steam Packet Company, for the protection of title to, and property in said steamer, and under the provisions of § 27 of ch. 151 of the Virginia Code, on the 29th day of January, 1869, presented a petition to the said Circuit Court, disputing the validity of said attachment, and claiming title to the steamer as the owners thereof, and also tendered a plea to the jurisdiction of the court, and filed a motion to quash the attachment.

Before any hearing or further steps were had upon the proceedings taken against the Baltimore Steam Packet Company for the sale of the steamer under the said second attachment, the Baltimore Steam Packet Company, on the 6th day of March, 1869, caused a notice to be served upon the defendant Garrison, personally, by which they notified him of said proceedings, and thereby vouched and required him to defend them against the claim of lien on said steamer, made by the

Norfolk & Petersburg Railroad Company under and by virtue of the said attachment. The defendant, Garrison, however, paid no attention whatever to the said notice, and did nothing whatever to defend the title of the plaintiff, the Baltimore Steam Packet Company, against the said proceedings to enforce the said attachment, or to protect them against the same.

The motion for the sale of the steamer and the petition, plea and motion of the Baltimore Steam Packet Company in opposition to the motion for said sale came on for hearing on the 11th day of January, 1870. Upon this hearing the Baltimore Steam Packet Company, by competent attorneys and counsel employed by them in that behalf, defended and opposed the proceedings to enforce said attachment, and endeavored to maintain their title against the said proceedings. The validity of the said attachment and of the levy upon the steamer under it was, however, sustained by the court, and the question of the title to said steamer at the time of the levy of said attachment, was tried by the court and a jury in pursuance of the provisions of the Virginia Code, and the jury rendered their verdict that, at the time of the levy of the attachment, the Baltimore Steam Packet Company had title to three-fourths of the said steamer, and that the said Garrison had title to the other one-fourth part thereof liable to said attachment. Thereupon evidence was taken by the court with respect to the cash market value of one undivided one-fourth part of the steamer, and such value was found to be $12,500, and thereupon on the 19th of January, 1870, the court rendered its decree, whereby it was ordered that the said one-fourth part of the said steamer, adjudged by the said verdict to be subject to the lien of said attachment, should be sold, and the proceeds of such sale paid to the Norfolk & Petersburg Railroad Company, on account of their said judgment against Garrison, and whereby it was further provided that if Garrison or the Baltimore Steam Packet Company, the claimant of said steamer, should, within thirty days from the adjournment of said court, pay to the said Norfolk & Petersburg Railroad Company the sum of $12,500, then no further proceedings should be had under said decree; and

the said sum of $12,500 so paid should be in full satisfaction of the lien of the said attachment upon the said steamer.

The Baltimore Steam Packet Company, thereupon, on the 2d day of February, 1870, caused said Garrison to be personally served with a certified copy of said decree, and with a further notice by which they called upon Garrison to protect them against the said decree, and notified him that in the event of his failure so to do, they would be compelled, under said decree, to pay the said sum of $12,500.

On the 9th day of February, 1870, the Baltimore Steam Packet Company caused Garrison to be personally served with a further notice, calling his attention to certain provisions of the Virginia Code, under which he still had an opportunity of making defense against said decree, if so advised.

On the 1st day of March, 1870, the Baltimore Steam Packet Company caused Garrison to be served personally with a further notice, to the effect that the limitation of time prescribed for the payment of the decree would expire on the 4th of March, 1870, and that unless by that day he protected them and the steamer against the said decree, they would be compelled to pay the sum of $12,500, therein referred to, in order to prevent the sale of the undivided one-fourth part of the steamer, and would hold him responsible to them for the sum so paid, and also for their costs, &c.

Garrison did not respond in any way to these notices, and thereupon, on the 4th day of March, 1870, the Baltimore Steam Packet Company paid the said sum of $12,500 to the Norfolk & Petersburg Railroad Company, under the said order and decree, in full satisfaction thereof and of the lien of the said attachment, the said sum of $12,500 being far less than the cash market value of the said steamer, adjudged as aforesaid to be subject to the lien of the said attachment.

The Baltimore Steam Packet Company also necessarily expended for costs and charges of attorneys and counsel, in resisting the proceedings to enforce the attachment against the steamer, more than $3,001 75.

Upon the above facts, the court held, as conclusions of law, that the plaintiff, the Baltimore Steam Packet Company, were

entitled to recover of the defendant Garrison, the sum of $12,500, paid by them in satisfaction of said judgment, together with interest on said sum from the date of said payment, to wit, the 4th day of March, 1870, and that the said plaintiffs were also entitled to recover of the defendant Garrison, for costs, charges, &c., necessarily expended by them in the defense of said proceedings to enforce said attachment, the sum of $3,001 75, with interest from October 4, 1870, the date of the commencement of the present action.

Judgment was thereupon duly rendered, and entered in favor of the plaintiff and against the defendant, for said amounts and interest, besides costs, from which judgment this appeal was taken.

*Erastus Cooke*, for appellant.

*Edmund Randolph Robinson*, for respondent.

CHARLES P. DALY, Chief Justice.— By the agreement, which was in writing, the defendant stipulated that he would deliver the steamer, free and clear of all liens and incumbrances, at the plaintiff's wharves, in the city of Baltimore, within fifteen days after the ratification of the agreement by the plaintiff. The agreement was ratified on the 13th of August, 1866, whereby the defendant became bound to deliver the steamer at the stipulated place, within the stipulated time, and until he had fulfilled that condition, the agreement was not performed on his part. It in no way affects his obligation to comply with this condition, or his responsibility for his failure to perform it, that before the time of delivery, the plaintiff paid the contract price, and the defendant delivered to it the bill of sale, or muniments of title; for there still remained the unperformed condition on the part of the defendant, which was absolute and unqualified, that he would deliver the steamer at a designated place, within a specified time, free and clear of any lien or incumbrance, and it was for the loss and damage which the plaintiff sustained by reason of the defendant's failure to perform this condition, that the action was brought. There is,

in this feature, no essential difference between this case and *Bigler* v. *Hall* (54 N. Y. 167); indeed, the arguments and the chief authorities which are urged upon our consideration here by the appellant's counsel, are substantially the same as were relied upon there by the judge who delivered the dissenting opinion. The question is not whether the title passed to the plaintiff, whereby it became the owner of the vessel before delivery, but whether this was a subsisting and unperformed covenant, for the non-fulfillment of which the defendant is liable. That the defendant, however, considered himself the owner of the steamboat after the ratification of the agreement, and before her delivery, appears by his own act; for the vessel, having within that period, that is, on the 16th of August, 1866, been attached in Norfolk, in a suit against the defendant, which attachment was quashed, the defendant brought an action for damages against the person at whose instance the attachment was issued, and in the complaint in that action, the defendant averred that at the time of and during the attachment and detention of the steamer, he *was the owner of her;* that he lost the use and benefit of her for twenty days, and was put to great expense in employing counsel, and in other respects to procure her discharge, for which he claimed $30,000 damages, and recovered $2,752.

On the 17th of August, 1866, whilst the vessel was held under the first attachment, a second attachment was issued in the Circuit Court of Norfolk, which was served by a delivery of a copy of the writ to the general agent in charge of the steamer, the vessel then being in the possession of an officer of the court under the first attachment. On the 3d of September, 1866, the steamer was released from the first attachment by the giving of a bond, upon which day, the plaintiff in the second attachment, to enable him to take and hold possession of her, gave the requisite bond under the Virginia statute; but when the officer of the court proceeded to the wharf, she had been cast loose, and was moving down the river on her way to Baltimore, to be delivered to the plaintiff, so that the officer could not take possession of her. The second attachment was in a suit brought against the defendant. The plaintiff in that suit pro-

ceeded against the defendant by the publication of a summons, and at the expiration of the period of publication, the defendant not having appeared in the action, judgment was recovered against him on the 25th of June, 1868, by default, for $53,879 35. The plaintiff, after the recovery of this judgment, instituted proceedings in the same court for the sale of the steamer, and the plaintiff in the present action, upon receiving notice of the motion for the sale of the steamer, at once took steps to defend its title, and, as it was authorized to do under the Virginia Code, it, on the 29th of January, 1869, presented a petition to the court, disputing the validity of the attachment, claiming title to the steamboat as the owner of it, and simultaneous with this petition it tendered a plea to the jurisdiction of the court, and moved to quash the attachment.

On the 6th day of March, 1869, and while the proceedings in the court were pending and undetermined, the plaintiff gave notice in writing to the defendant, that proceedings by attachment had been taken against him by the Norfolk and Petersburg Railroad Company, and notifying him that the proceeding was then pending, and that it was to enforce a lien against the steamer to the amount of $50,000, and more; that it was claimed that the lien was created, and the attachment levied in a suit therefor brought against the defendant in the Circuit Court of Norfolk by the Norfolk and Petersburg Railroad Co.; that the plaintiff in the present action, as purchaser and owner of the steamer, gave him, the defendant, notice of the proceeding, and further notice that it would hold him responsible for all injury, expenses and damages which might result from the alleged lien, if it should be established. On the 10th of June, 1870, more than ten months after the service of this notice upon the defendant, the motion in the Circuit Court of Norfolk for the sale of the steamer was brought to a hearing, which motion was granted; the court deciding against the plaintiff upon all the points taken by it, and on the 19th of June, 1870, the court made its decree adjudging that the steamer was subject to the lien of the attachment; that one-fourth part of her should be sold, and the proceeds paid to the plaintiff in the attachment; but providing

that if the plaintiff or the defendant, should, within thirty days after the adjournment of the court, pay to the plaintiff in the attachment $12,500, that it should be in full satisfaction of the lien, and that no further proceedings should then be had under the decree.

The defendant took no steps to interpose, or make any defense to the proceeding to compel a sale of the vessel for the satisfaction of the alleged lien, and it is now set up in his behalf, that the written notice served upon him did not give him sufficient information to enable him to appear and defend, and in addition, that it was too late. I have set forth substantially what the notice contained, and, in my judgment, it was amply sufficient to enable him, if he had been so disposed, to appear in that proceeding and defend it (*Miner* v. *Clark*, 15 Wend. 425; *Riley* v. *Seymour*, 1 Id. 143; *Chamberlain* v. *Preble*, 11 Allen, 370); and as to its being too late, it was served upon the defendant ten months before the motion was heard. It is also urged that when the notice was served, judgment had already been rendered against the defendant, and that there was no remedy for him then but to appeal from the judgment. There is nothing in the case to warrant any such conclusion. On the contrary, it was a judgment by default, in which there had been no personal service of process upon the defendant, but simply the publication of a summons, and by a provision in the Virginia Code, which appears in one of the documents printed in the case, a defendant, against whom a judgment is rendered by the publication of a summons, may, within one year after the service of a copy of the judgment or decree, or within five years from the date of the decree or judgment, where there has been no such service, petition the court to have the proceedings reheard, and upon giving security for costs, is admitted to make any defense he may have to the judgment. On the 2d of February, 1870, the plaintiff in this action caused a copy of the decree to be served upon the defendant, and on the 9th of the same month, they served him personally with a copy of the provision in the Virginia Code, with a notice that he would see by this provision that he had still an opportunity of making a defense against the judgment, if so advised, and

The Baltimore Steam Packet Company v. Garrison.

followed it up by the service of another notice on the 1st of March, 1870, advising him that the limitation of time would expire on the 4th of March following, and that unless, by that day, he protected them and the steamer against the decree, that they would be compelled to pay the $12,500 to prevent the sale of one-fourth of the vessel. Notwithstanding all these notices he did nothing, and on the 4th of March, 1870, the plaintiff paid the $12,500, to prevent the sale of the steamboat.

The counsel for the appellant went into an elaborate argument, and cited various authorities to establish that the whole proceeding in the Circuit Court of Norfolk was without jurisdiction and void. The plaintiffs employed counsel, and urged the very objections upon the hearing of the motion for the sale of the vessel, which the counsel for the appellant has now argued before us; but the court held that it had jurisdiction, and decreed the sale of the vessel. I do not propose to inquire whether the court was right or wrong in so holding, or to look into the question at all which the counsel has so elaborately discussed. The defendant was a warrantor who had stipulated to deliver the vessel free and clear from all liens or incumbrances. Upon her return to Norfolk, after she passed into the possession of the plaintiffs, and they had become the owners of her, proceedings were taken there in a judicial tribunal for her sale to enforce and satisfy a lien upon her, alleged to have been created by the institution of judicial proceedings against the defendant whilst the vessel was yet in his possession in Norfolk, and before the delivery of her to the plaintiffs. The defendant, having been notified by the plaintiffs of the alleged lien, and of the proceedings taken to enforce it, and having had ample time, nearly a year, within which to appear and make any defense he might have to the proceeding or the judgment upon which it was founded, is concluded by the decree or final judgment of the Virginia court, and estopped from setting up in this action any defense which he may have had to the judgment or the proceeding (*Howe* v. *The Buffalo N. Y. & Erie R. R. Co.* 38 Barb. 126; affi'd in 37 N. Y. 297; *Craig* v. *Ward,* 36 Barb. 377; *Fake* v. *Smith,* 7 Abb. Pr. N. S. 106; *Barney* v. *Dewey,* 13 Johns. 224; *Bender* v. *Fromberger,* 4 Dallas, 436; *Harris* v.

*Rowland*, 23 Ala. 644; *Knapp* v. *Marlboro*, 34 Vt. 241; *Thurston* v. *Spratt*, 52 Maine, 202; *Chamberlain* v. *Preble*, 12 Allen, 370). The application of this rule does not, as the appellant claims, depend upon the question whether the court had or had not jurisdiction; but is founded upon the equitable principle that a vendor who has covenanted that the property sold is free from incumbrances, is, when duly notified that a claim is made upon it and proceedings instituted to enforce it, bound to interpose for the protection of the vendee, and try the validity of the claim, or the right of the court to enforce it in the action or proceeding brought by the claimant, and should not be permitted to litigate that question in the action brought against him by the vendee for the non-performance of his contract.

The defendant having covenanted to deliver the vessel free from any lien or incumbrance, should, when proceedings were instituted against her, in Norfolk, to enforce a lien alleged to have existed before her delivery to the plaintiffs, have appeared and interposed in that proceeding if he had any defense to it, and having, upon due notice omitted to make any objection, the plaintiffs were justified in paying the amount decreed by the court, as their vessel would otherwise have been sold, and the defendant was bound to restore to them the amount so paid, having failed to fulfill his contract.

The judgment should be affirmed.

JOSEPH F. DALY and LOEW, JJ., concurred.

Judgment affirmed.